Defendant appeals from the Montgomery County Circuit Court's grant of injunctive relief in favor of the plaintiff and award of damages based on her trespass and nuisance claim against defendant.
Defendant, Bill Alonzo, and his wife live next door to the plaintiff, Audrey Sanford, on Nora Place in Montgomery. Nora Place is part of a subdivision known as Woodmere Plat # 5, consisting of patio homes. These patio homes are single-family homes built on the property line, or "zero lot line." The term "zero lot line" means that a lot owner's house is constructed on his neighbor's property line and they share a common-party wall. The west property line of Mrs. Sanford's lot adjoins the east property line of Mr. Alonzo's lot. On the property line is constructed a common-party wall which serves as one of the walls for Mr. Alonzo's house and to which his roof is attached. Mr. Alonzo's roof overhangs Mrs. Sanford's property. There is a strip of grass between the west side of Mrs. Sanford's house and the common wall.
A gutter runs along Mr. Alonzo's eastern eave. As originally constructed, a downspout was attached to each end of this gutter. The downspouts directed water from the gutter onto Mr. Alonzo's property. This drainage system caused some drainage problems for Mr. Alonzo, so he investigated several methods to correct these problems. Mr. Alonzo studied the recorded Woodmere Plat # 5 and discovered an easement that he believed would help him solve the drainage problems. He then altered his existing gutter system, removing the downspouts, so that the water from his roof no longer drained onto his lot but was diverted onto Mrs. Sanford's property. He planned to place splash blocks on Mrs. Sanford's lot in order to help disperse the water. Mr. Alonzo informed Mrs. Sanford of his plans, and told her that the recorded easement authorized him to drain his water onto her property. Mrs. Sanford at first consented to Mr. Alonzo's plan, but later, *Page 1133 
before his plan was complete, told him that she did not want his water to drain onto her property. In support of her objection to Alonzo's water draining onto her property, Mrs. Sanford also refused to allow Alonzo access to her property so that he might complete his plan of diverting his water onto her property.
The alteration of Alonzo's gutter system, however, caused water to be directed onto Mrs. Sanford's lot, resulting in washing most of her yard away. Consequently, Mrs. Sanford brought this action in the Montgomery County Circuit Court seeking to compel Mr. Alonzo to restore the gutter system to its former status and cease dumping water onto her property. She also sought recovery on the theories of nuisance and trespass, and damages therefor. The jury awarded damages to Mrs. Sanford in the amount of $900 and recommended that Mr. Alonzo be ordered to replace the downspouts on his roof and refrain from draining water onto Mrs. Sanford's property. The trial court followed the recommendation of the jury and ordered Mr. Alonzo to restore the drainage system to its status quo. After his motion for a new trial was denied, Mr. Alonzo appealed to this court.
Mr. Alonzo contends that the trial court erred in granting injunctive relief to Mrs. Sanford and in awarding damages on her nuisance and trespass claims, because he had a legal right under the drainage easement contained in the Woodmere plat to drain water from his lot onto Mrs. Sanford's property.
The easement in question is as follows:
 "The land surface area between such principal buildings (not to exceed more than seven (7) feet from the lot line) shall be subject to an easement for the use of the abutting owners, their agents, employees and invitees for the purpose of maintenance and decoration of their respective improvements at reasonable times during daylight hours, and for the drainage of water from the lots and the roofs of the buildings. Also the abutting owners shall have [an] easement over the adjoining property not to exceed three (3) feet from the outside wall of such principal building for the eaves of the principal building roof and the discharge of water therefrom."
Mrs. Sanford asserted at trial that the language in the easement grant was ambiguous and uncertain, requiring judicial construction. Mr. Alonzo urged, however, that the language of the grant was clear and unambiguous, requiring no legal construction. He claims that, therefore, a verdict should have been granted in his favor because the easement clearly authorizes him to divert the water from his lot onto Mrs. Sanford's lot.
Whether a particular writing is ambiguous is a question of law for the trial court. Universal Development Corp. v. Shader,382 So.2d 1115 (Ala. 1980). The trial court determined that the above language was ambiguous, and we agree.
The rules for construction of easement grants are in general the same as rules applied to deeds and other written instruments, and, therefore, we apply general rules of construction to the easement language before us. See collected cases at 28 C.J.S. Easements Licenses § 26 (1941). Our courts have held that if the language of an instrument is uncertain in any respect the surrounding circumstances and the construction placed on the language by the parties are taken into consideration in determining the meaning of the instrument.City of Montgomery v. Maull, 344 So.2d 492 (Ala. 1977).
The language of the easement here involved indicates that abutting landowners have the right to drain water from their roof onto a neighbor's property not to exceed seven feet from the lot line. The easement also provides that Woodmere homeowners have the right to discharge their water from the eaves of their roofs onto adjoining property, not to exceed three feet from their outside wall.
The grant language is unclear whether Mr. Alonzo is limited to a three foot easement or a seven foot easement in the drainage *Page 1134 
of his water. Nor does Mr. Alonzo's brief or testimony at trial indicate which limit is applicable to the instant facts. Thus, we cannot say that there is no ambiguity in this grant concerning the physical area over which Mr. Alonzo may drain his water. Moreover, if Mr. Alonzo's interpretation were to prevail, the result would be that each abutting landowner would be permitted to completely drain his water onto his neighbor's lot and vice versa. The trial court found such an interpretation to be unreasonable and we agree.
Clearly, such an interpretation of the easement would not be beneficial to anyone in the neighborhood. Nor do we deem it reasonable to permit Mr. Alonzo to drain all of his water onto Mrs. Sanford's property so as to materially increase her property's drainage burden. We, therefore, conclude that the easement language as applied is unclear and ambiguous, and that the trial court was permitted to consider the surrounding circumstances plus the construction placed on the easement by the parties in order to properly construe the instrument.
Testimony given by the Woodmere builder and the chief of the city engineering department indicated that each unit in this subdivision was intended to manage its own water. Furthermore, other patio homeowners in the neighborhood had not altered their gutter systems so as to completely divert their water onto a neighbor's lot. And, finally, the interpretation advanced by Mr. Alonzo appears to be inconsistent with the subdivision scheme itself. As noted previously, in this subdivision, the roof of one neighbor's lot overhangs the adjoining lot, so that any excess water resulting from heavy rains that could not be effectively handled by the existing gutter system might overflow onto the adjoining lot. Mrs. Sanford contended that the easement permits this excess water to drain onto an adjoining lot without such drainage constituting a trespass, and that the easement is not intended to permit each lot owner to change the existing gutter system so as to completely divert his water onto his neighbor's lot.
The court, after considering the above evidence, gave the following interpretation of the easement:
 "The Court finds that the easement language does not allow the Defendant Alonzo to alter the gutter system which was in effect when he purchased his house (which gutter system complied with the subdivision requirements of the City of Montgomery) so as to collect or otherwise allow the water from his roof to be diverted onto the property of Mrs. Sanford. It is the intention of the easement language to permit such inadvertent overflows which may occur during those periods when the gutter system may not be able to handle effectively all the water falling during a heavy rainfall."
We find that the construction placed on the easement by the trial court gives it a rational and reasonable meaning that does not produce an unjust result. As stated by the North Carolina Supreme Court:
 "Their meaning, it is true, must be expressed in the instruments, but it is proper to seek for a rational purpose in the language and provisions of the deed and to construe them consistently with reason and common sense. If there is any doubt entertained as to the real intention, we should reject that interpretation which plainly leads to injustice and adopt that one which conforms more to the presumed meaning, because it does not produce unusual and unjust results."
Patrick v. Jefferson Standard Life Insurance Co., 176 N.C. 660,97 S.E. 657 (1918).
Because of the ambiguous language of the easement, the trial court was authorized to give it, in light of the surrounding circumstances, a reasonable construction. The trial court's determination that Mr. Alonzo had no legal right to completely divert his water onto Mrs. Sanford's lot is a reasonable construction of the easement, and the trial court's finding in favor of Mrs. Sanford on all of her claims must be upheld. *Page 1135 
Mr. Alonzo next contends that the trial court erred in giving Mrs. Sanford's requested jury charge number 10, imposing a reasonableness requirement on the use of the easement. Mr. Alonzo urges that a "rule of reason" should not be engrafted on the easement language since the easement was unambiguous. We disagree with this assertion for the reasons stated above. Mr. Alonzo further urges that such an instruction was error because the grant was specific in its terms and is, thus, decisive of the limits of the easement, and no such requirement of reasonableness exists. As stated previously, the easement in question was not specifically nor clearly defined, so that the trial court was required to impose a reasonable use requirement on the language so as to enable the jury to determine whether Mr. Alonzo had exceeded the scope of the easement. See,Anderson v. Edwards, 625 P.2d 282 (Alaska 1981). The testimony at trial revealed that Mr. Alonzo's alterations had caused damage to Mrs. Sanford's yard, and had interfered with her use of her property. Accordingly, we hold that the court's charge that Mr. Alonzo's use must be reasonable was not error.
Defendant finally contends that the trial court erred in granting plaintiff's request for injunctive relief, and asserts as ground for his contention that the trial court failed to balance the interests of the parties involved in granting injunctive relief.
We note at the outset that the grant of injunctive relief is within the trial court's sound discretion. The trial court may consider and weigh the relative degree of injury or benefit to the parties in considering whether to grant an injunction, and only where such discretion is abused will the lower court's order be reversed. Drake Associates v. Letson, 277 Ala. 512,172 So.2d 536 (1965).
Assuming that Mr. Alonzo's actions constituted a nuisance or trespass, the trial court must have employed a balancing test in order to determine whether an injunction was a proper remedy. Southwestern Construction Co. v. Liberto, 385 So.2d 633
(Ala. 1980).
The trial court heard Mrs. Sanford's testimony concerning the damage to her property caused by Mr. Alonzo's drainage alterations. Her yard has been washed away and a realtor testified that, as a result, Mrs. Sanford's home was unmarketable. Requiring Mr. Alonzo to restore the gutters to their status quo would completely eliminate Mrs. Sanford's problems, and the resulting injury to Mr. Alonzo would be no greater than that which he suffered prior to his alterations. Therefore, considering the evidence above, we do not find that the trial court abused its discretion in granting injunctive relief ordering Mr. Alonzo to restore the gutter system to its original status.
Accordingly, we affirm the trial court's grant of injunctive relief in favor of Mrs. Sanford and find that she was further entitled to award of damages based on her trespass and nuisance claims.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.