Tom A. Fouts appeals from three aspects of the trial court's judgment declaring the rights of Fouts and Richard E. Beall with respect to their property and denying certain injunctive relief to Fouts. We affirm.
Prior to June 17, 1981, the real property that is the subject of this case was owned by James S. Farrior. The property, which was a single parcel at that time, fronted on Mobile Bay near Montrose in Baldwin County for a distance of 259 feet along the west line of the property. (See Appendix.) The improvements on this property consisted of two residential houses and a pier onto *Page 1238 
the waters of Mobile Bay. On June 17, 1981, Farrior divided the property into two parcels by selling the easternmost 236 feet, including one of the houses (parcel 1 on the Appendix), to Fouts. In the conveyance to Fouts, Farrior expressly conveyed the following described easement:
 "[A] 10 foot wide beach access easement (restricted to pedestrian traffic only) encumbering the South 10 feet of the parcel now owned by Grantors located immediately West of the parcel conveyed hereby, which easement is more particularly described as lying along and 10 feet North of a line beginning at the Southwest Corner of parcel conveyed hereby and running West 390 feet, more or less, to the East margin of Mobile Bay." (See Appendix.)
On September 12, 1981, Farrior sold the westernmost parcel of property (parcel 2 on the Appendix) to Beall. The deed to Beall excepted the beach access easement, using language substantially identical to that used in the deed to Fouts. In addition, Beall was granted a 20-foot-wide roadway easement for ingress to and egress from his property. This easement runs through the property purchased by Fouts and was excepted in Farrior's deed to Fouts.
Approximately one and a half years after Beall and Fouts became neighbors, personal problems arose between them. These problems continued through the trial of this case in the circuit court.
In late 1985, Fouts proposed to construct a pier appurtenant to the beach access easement and applied to the Army Corps of Engineers for a permit to do so. Beall filed a formal objection to the construction of the pier with the Corps of Engineers. As a result of this objection, the Corps of Engineers refused to process the pier permit application until a determination was made as to whether Fouts held a sufficient property interest to entitle him to construct a pier.
On February 14, 1986, Beall filed a complaint in the Circuit Court of Baldwin County, seeking (1) to enjoin Fouts from obstructing or interfering with his roadway easement; (2) to enjoin Fouts from harassing and intimidating him; (3) to enjoin Fouts from trespassing on his property; and (4) to enjoin Fouts from firing or throwing any projectile across his property. Fouts filed an answer denying the allegations of Beall's complaint and a counterclaim alleging that Beall had damaged the roadway easement with a bulldozer and that Beall had no right to object to his construction of a pier from his beach access easement. In his counterclaim, Fouts requested a judgment declaring that Fouts could cut trees and undergrowth from the beach access easement; that Fouts owned an interest in the beach access easement that would allow him the right to build a pier from the easement; and that Fouts was not limited to the use of the beach and shores of Mobile Bay inside the width of the easement but could use the beach extending across Beall's property. Fouts also sought to enjoin Beall from constructing a six-foot high concrete wall along the common boundary between their property.
After conducting several hearings, the trial court, sitting without a jury, entered a final judgment that (1) permanently enjoined the parties from intimidating or harassing each other; (2) declared the respective rights and responsibilities of the parties for the use and maintenance of the roadway easement; (3) held that Fouts's beach access easement was not a sufficient property interest to entitle him to construct a pier; (4) provided for the removal of obstructions by Fouts from the beach access easement; (5) held that Fouts is not entitled to use any portion of the area that lies beyond the boundaries of the beach access easement; and (6) refused to enjoin Beall from the construction of a concrete wall along the common boundary.
Fouts's motion for a new trial was denied, and Fouts appealed. He specifically appeals from (1) the denial of the right to construct a pier appurtenant to the beach access easement; (2) the denial of the right to use the area beyond the boundaries of the easement; and (3) the refusal to enjoin Beall from constructing a concrete wall along the common boundary. *Page 1239 
 Construction of a Pier
Both Fouts and Beall argued at trial that the language in the easement grant was ambiguous. Fouts argued that the easement grant included the right to construct a pier, while Beall argued that the easement grant conveyed only the right of pedestrian access to the beach.
The question of whether a particular instrument is ambiguous is a question of law for the trial court. Alonzo v. Sanford,465 So.2d 1131 (Ala.Civ.App. 1984). In this case, the trial court determined that the language in the easement grant was ambiguous, and we agree.
If the language of an instrument is ambiguous in any respect, the surrounding circumstances and the construction placed on the language by the parties may be taken into consideration in determining the meaning of the instrument. City of Montgomeryv. Maull, 344 So.2d 492 (Ala. 1977). Furthermore, the intent of the parties may be ascertained by parol evidence. Mayo v.Andress, 373 So.2d 620 (Ala. 1979). When evidence of the intent of the parties is in dispute, it is a fact question to be determined by the trial court, and its findings will be presumed to be correct unless plainly erroneous or manifestly unjust. J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834
(Ala. 1981), and Mayo v. Andress, supra.
Fouts first argues that the testimony of Farrior, the grantor of the property, was inadmissible for purposes of determining his intent in conveying the easement. Fouts specifically argues that Farrior had never formed any intent with respect to the construction of a pier at the time he conveyed the easement.
Rulings as to the admissibility of evidence rest largely within the discretion of the trial court and will not be disturbed on appeal in the absence of a gross abuse of discretion. Russellville Flower Craft v. Searcy, 452 So.2d 478
(Ala. 1984). The trial court, finding that Farrior did form an intent at the time he conveyed the easement, admitted portions of Farrior's deposition testimony relating to his intent at that time. Farrior testified that he intended to convey only a pedestrian easement, which did not include the right to construct a pier. We cannot say that the trial court abused its discretion by admitting portions of Farrior's testimony.
The only evidence presented with respect to the intent of the parties was that of Farrior. The trial court considered this evidence and found that Farrior intended to grant a beach access easement limited to pedestrian traffic only. We find that the trial court's construction of the easement is reasonable and does not produce an unjust result. SeeAlonzo v. Sanford, supra.
 Use of the Beach
The same general principles of construction of the language of an instrument, as stated in the foregoing discussion, apply to this issue. However, we note that the ore tenus presumption of correctness applies only to the resolution of disputed facts and that if the facts are undisputed, the appellate court must determine whether the trial court misapplied the law to the facts. Home Indemnity Co. v. Reed Equipment Co., 381 So.2d 45
(Ala. 1980).
The trial court defined "beach" as that word is used in the document creating the easement to mean the soft sandy area between the mean high tide line and the vegetation line,which area is privately owned by Beall and is not subject touse by the public. The trial court determined that Beall's west property line extends to the mean high tide line of Mobile Bay. (See Appendix.) Considering this definition of the word "beach" in this particular document, the trial court held that Fouts was entitled to use any portion of the soft sandy area of Mobile Bay that lay between the waters of the bay and the mean high tide line, which area was not owned by Beall, in the same manner as any member of the public. The trial court also held that Fouts was entitled to the complete use of the area within the 10-foot beach access easement, including that area between the mean high tide line and the vegetation line, but could not use any portion of the area *Page 1240 
between the mean high tide line and the vegetation line that lay outside the 10 feet.
Neither Fouts nor Beall disagrees with the trial court's definition of the word "beach" in the easement document. However, Fouts argues that the easement grant included the right to use the area that lay between the mean high tide line and the vegetation line, even that portion outside the 10 feet running along the south side of Beall's property. He argues that the trial court's ruling does not give him any rights different from the rights of any member of the public. We disagree with this construction of the trial court's decree. Under the easement before the trial court, Fouts was given a short cut to the bay that he otherwise would not have. Without this right of access, he would be required to use his automobile to drive to another area in order to attain access to the waters of the bay.
Fouts relies upon Anderson v. De Vries, 326 Mass. 127,93 N.E.2d 251 (1950), as support for his argument that he is entitled to use the sandy area extending outside the width of the easement and across Beall's property. We find the facts inAnderson distinguishable from the facts in this case. InAnderson, residents of a sea shore resort were granted a 12-foot-wide easement to the beach. Considering the numerous lot owners involved and the fact that the width of the easement did not provide a sufficient area for use, the court found that the intentions of the parties were that the lot owners were to have access to the entire area above the mean high water mark, including that area outside the 12 feet. In the instant case, only one lot owner is involved and there is evidence to support a finding that it was intended that he be entitled to use only that portion of Beall's property that lay within the 10-foot boundaries of his easement. Accordingly, we find that the trial court did not misapply the law to the facts.
 Construction of a Wall
Fouts argues that the trial court should have enjoined the construction by Beall of a six-foot high concrete wall along the common boundary between their property. He asserts that the judgment of the trial court is not supported by the great weight and preponderance of the evidence. Fouts alleged that the wall was being built to harass, inconvenience, or damage him.
After hearing all the evidence and visiting the property, the trial court found that Beall was constructing the wall in order to protect his family and the enjoyment of his home from invasions of privacy by Fouts. The trial court heard testimony concerning numerous examples of Fout's disruptive and harassing conduct toward Beall and his family. We find that the judgment of the trial court is supported by the evidence and is not plainly or palpably wrong. See Davis v. Thomaston, 420 So.2d 82
(Ala. 1982).
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur. *Page 1241 
[EDITORS' NOTE: The appendix IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 1242