The defendants, the Jasper city council and council members V.L. Posey, John Rollins, and Lee Swann, appeal from an order of the Walker Circuit Court ruling that Mayor Penn Woods's veto of certain resolutions adopted by a majority of the city council was valid to nullify those resolutions. We reverse and remand.
 I.
On February 10, 1994, the city council adopted certain resolutions prohibiting the City of Jasper Sanitation Department from disposing of solid waste,[1] other than inert materials, at the Jasper city landfill through the end of the fiscal year, i.e., September 30, 1994. On February 12, Woods executed a document stating that he had vetoed the council's actions. Ala. Code 1975, §§ 11-45-3 and -4, provide mayors of cities with populations of 12,000 or more (this population classification would include Jasper) the authority to veto "resolutions or ordinances intended to be of permanent operation." § 11-45-3. However, a mayor's veto may be overridden by a two-thirds vote of the members of the city council. § 11-45-4.
On February 22, Woods filed an action seeking a judgment declaring that his veto was effective and that the resolutions of the city council were null and void, and requesting an injunction to enforce such a ruling. The court held a hearing on March 3, at which it received ore tenus testimony, and on March 7 it held that Woods's veto was invalid as to budgetary items, but was valid as to the resolutions relating to the council's prohibition on disposal of solid waste, other than inert materials, at the Jasper city landfill. The court's March 7 order concluded that "all of the actions of the landfill are both permanent and general in their application, no matter what their nomenclature."
On March 15, Woods moved the trial court to alter, amend, or vacate that part of the order that had invalidated Woods's veto over budgetary items. The court on March 18 granted Woods's motion and vacated that portion of the order. In response, the city council petitioned this Court for a writ of mandamus directing the Walker Circuit Court to order Woods to comply with a certain budgetary resolution adopted at the February 10 meeting. We treated the mandamus petition as a motion for a stay and, on April 5, 1994, stayed the trial court's March 18 order, pending the outcome of the council's appeal, which was filed on April 18, 1994.
 II.
The trial court's first order summarized the council's February 10, 1994, motions on which the resolutions were based:
"Motion # 2 — February 10, 1994:
 "A motion by Councilman Rollins that a garbage tax or fee not be levied for the remainder of the Council term, which carried by a vote of 3 to 2.
"Motion # 3 — February 10, 1994:
 "A motion by Councilman Swann that the Council not provide funding for a Subtitle D landfill for the fiscal year 1993-1994, which carried by a vote of 3 to 2.
"Motion # 4 — February 10, 1994:
 "A motion by Councilman Rollins that the present Jasper landfill be permitted only for inert materials for the balance of the fiscal year 1993-1994, which motion carried by a vote of 3 to 2.
"Motion # 5 — February 10, 1994:
 "A motion by Councilman Swann that no waste other than inert materials be accepted *Page 725 by Jasper's landfill for the remainder of the fiscal year 1993-1994, which carried by a vote of 3 to 2.
"Motion # 6 — February 10, 1994:
 "A motion by Councilman Rollins that the mayor and city employees be ordered to deliver all waste, other than inert materials, to the Pineview Landfill Facility, beginning March 1, 1994, which carried by a vote of 3 to 2.
"Motion # 7 — February 10, 1994:
 "A motion by Councilman Swann not to fund vertical stacking at Jasper's landfill for the fiscal year 1993-1994, which carried by a vote of 3 to 2.
"Motion # 8 — February 10, 1994:
 "A motion by Councilman Swann that the budget for fiscal year 1993-1994 be amended, which carried by a vote of 3 to 2.
"Motion # 9 — February 10, 1994:
 "A motion by Councilman Rollins that no job be lost at the Jasper landfill as a result of these actions, which carried by a vote of 5 to 0.
"Motion # 10 — February 10, 1994:
 "A motion that the Mayor begin spending the funds appropriated in Motion # 8 on March 1, 1994, which carried by a vote of 3 to 2.
"Motion # 11 — February 10, 1994:
 "A motion that all employees be instructed that any deviation from these motions will create personal liability, which carried by a vote of 3 to 2.
"Motion # 12 — February 10, 1994:
 "A motion that all city employees be advised that no approval nor disapproval is required for these actions, which carried by a vote of 3 to 2."
(Emphasis added.) The resolutions passed by the council appear to have been a response to certain regulations of the Federal Environmental Protection Agency ("EPA") and the Alabama Department of Environmental Management ("ADEM"), which were to become effective on April 9, 1994. Thus, a general understanding of the regulations is necessary for an understanding of this appeal.
The Federal Resource Conservation and Recovery Act ("RCRA")[2] ordered the EPA to promulgate new regulations regarding solid waste management, resulting in the adoption of40 C.F.R. § 258.1, "Criteria for Municipal Solid Waste Landfills." These new EPA regulations place extensive controls on the operation of municipal and other solid waste landfills (commonly referred to as RCRA's "Subtitle D requirements"), including restrictions on landfill locations, provisions for landfill design and operating criteria, groundwater monitoring requirements, and requirements for landfill closure and a 30-year post-closure monitoring period. ADEM has adopted similar solid waste landfill regulations that incorporate the federal Subtitle D requirements. ADEM Admin. Code R.335-13-4-.01 et seq. All landfills in Alabama accepting sanitary solid waste on or after April 9, 1994, the effective date of 40 C.F.R. § 258.1, must meet Subtitle D requirements, unless a certain temporary exemption is applicable.
It is undisputed that the existing Jasper city landfill does not meet Subtitle D requirements and that an expensive new landfill would have to be constructed in order for those requirements to be met. However, ADEM Admin. Code R.335-13-5-.08 provides that certain solid waste landfills, such as the Jasper city landfill, may obtain a permit from ADEM allowing them to continue operating until as long as October 8, 1995, under "vertical expansion," i.e., continued disposal of solid waste in only those areas of the landfill where such waste had previously been disposed of. If the Jasper city landfill, which does not meet Subtitle D requirements for landfill design and operation, operates under "vertical expansion" and accepts solid waste on or after April 9, 1994, the effective date for Subtitle D requirements, it must comply with extensive Subtitle D closure and post-closure requirements. ADEM Admin. Code R.335-13-4-.20(9). In any event, regulatorily mandated closure requirements must be completed within 180 days after the landfill's final receipt of solid waste, whether *Page 726 
that date is October 8, 1995, or earlier. ADEM Admin. Code R.335-13-4-.20(7).
 III.
At the hearing on Woods's complaint, the trial judge received oral testimony from several experts. Where evidence is presented to the trial court ore tenus, the court's findings of fact based on that evidence are presumed correct and those findings will not be disturbed on appeal unless they are clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Griggs v. Driftwood Landing, Inc., 620 So.2d 582
(Ala. 1993); Cougar Mining Co. v. Mineral Land MiningConsultants, Inc., 392 So.2d 1177 (Ala. 1981). However, where the facts before the trial judge are undisputed, the ore tenus presumption of correctness does not apply. Justice v. ArabLumber Supply, Inc., 533 So.2d 538 (Ala. 1988); Fouts v.Beall, 518 So.2d 1236 (Ala. 1987). Moreover, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment. Ex parteBoard of Zoning Adjustment of the City of Mobile, 636 So.2d 415
(Ala. 1993); Griggs, supra.
 IV.
Woods offered the expert testimony of Rex Wingo, the city engineer, who testified that he was knowledgeable about the effect of EPA and ADEM regulations on the Jasper city landfill. Wingo stated that the city landfill, which does not meet Subtitle D requirements, has historically accepted two types of solid waste: household garbage and other organic wastes, and inert materials, such as bricks, rocks, tires, and tree limbs. He testified that disposal of the inert materials at the city landfill would not be affected by Subtitle D requirements, because those wastes are considered separately from organic wastes.
Wingo testified that if organic wastes were disposed of at the Jasper city landfill after April 8, 1994, the landfill would then come under Subtitle D requirements for landfill closure and post-closure 30-year monitoring, but that if organic wastes are not accepted, then the post-closure monitoring period would last only five years. He further testified that once the city landfill stops accepting organic wastes, the portion of the landfill where such wastes had been disposed of will have to be closed within 180 days, in accord with regulatory requirements. Wingo said he believed that if the city landfill stops accepting organic wastes, it will have abandoned its permit to accept such wastes. He testified that he believed it would take two years to get a new permit from ADEM to operate a solid waste landfill. He said the Jasper city landfill had been given permission by ADEM to operate under "vertical expansion," but that if any organic waste was disposed of in an area other than that area where that waste was disposed of previously, then the city would be required to obtain a permit to construct an additional landfill "cell" meeting Subtitle D requirements.
In opposition to Wingo's testimony, the Jasper city council offered the expert testimony of William St. John, a registered professional engineer and president of an environmental consulting firm; and Sue Robertson, chief of ADEM's Land Division, which regulates hazardous, medical, and sanitary solid waste. Like Wingo, St. John testified that if the city landfill stopped accepting organic waste as of April 8, 1994, and accepted only inert materials, then the portions of the landfill where organic waste had been disposed of would have to be closed within 180 days and then undergo a five-year period of post-closure monitoring. St. John testified that if organic waste was deposited in the Jasper city landfill after April 8, 1994, so that Subtitle D requirements were invoked, the cost of post-closure monitoring for the landfill would be approximately $2 million or greater over the 30-year period. He explained that under Subtitle D requirements, post-closure groundwater monitoring was required for a minimum of 30 years and groundwater samples would have to be analyzed for 62 possible contaminants, rather than only 10, and that even stricter monitoring would be required if a groundwater contamination problem was detected. St. John testified that the $2 million estimate did not include the cost of groundwater remediation if that became necessary. *Page 727 
Robertson testified that the Jasper city landfill was authorized to operate as a sanitary solid waste landfill under "vertical expansion" until October 1995, but that any disposal of organic waste after April 8, 1994, would trigger the Subtitle D 30-year post-closure monitoring requirements. Unlike Wingo, Robertson testified that if organic waste disposal ended on April 8 and the landfill was operated only for disposal of inert materials, the city's permit to operate the landfill for disposal of organic waste until October 1995would not be lost and could become effective simply by beingrenewed. She agreed with Wingo that when organic waste disposal at the landfill ended, that portion of the landfill where such wastes had been disposed of would have to meet closure requirements within 180 days of the date on which the disposal of those wastes ended. However, in contrast to Wingo's testimony, Robertson testified that if the City of Jasper applied for a permit to construct a new solid waste landfill meeting Subtitle D requirements, it would take less than sixmonths for ADEM to process the permit, rather than two years.
 V.
Based on the expert testimony, the trial court ruled that the Jasper city council's resolutions prohibiting organic waste disposal at the city landfill until September 30, 1994, were acts of "permanent operation" and, thus, could be vetoed by the mayor. This Court has seldom addressed the issue of what types of city council resolutions are of "permanent operation." In general, we have stated that "[o]rdinances or resolutions of permanent operation are those which continue in force until repealed." City of Prichard v. Moulton, 277 Ala. 231,238, 168 So.2d 602, 609 (Ala. 1964). We explained that an example of an ordinance of permanent operation would be one that created a city office, such as that of tax collector or treasurer. 277 Ala. at 238, 168 So.2d at 609.
In Pierce v. City of Huntsville, 185 Ala. 490, 64 So. 301
(1913), this Court ruled that a resolution relating to a call for bids for paving streets and fixing assessments for the cost was not of "permanent operation." In Moulton, this Court held that a resolution relating to plans and estimates for construction of a garbage disposal plant was not of "permanent operation." Likewise, in Reed v. City of Montgomery,341 So.2d 926 (Ala. 1976), this Court held that a resolution relating to approval of a plan to construct sewers and other civic improvements was not of "permanent operation." Thus, the distinction between resolutions of "permanent operation" and those not of "permanent operation" is that those of "permanent operation" create a new expense or status of a constant and continuing nature.
The city council argues that the trial court erred in ruling that the resolutions were of "permanent operation," because, it says, they were to last only until the end of the fiscal year. It further argues that the short-term prohibition on disposal of organic waste at the city landfill created by the resolutions will not have a permanent impact on the operation of the landfill. It relies on Robertson's testimony that a cessation in disposal of organic waste at the Jasper city landfill would not cause the city to lose its solid waste landfill permit, but would only cause the city to have to renew its permit if the city later began disposing of organic waste during the period allowed for "vertical expansion" of the landfill.
The city council also argues that because disposal of organic waste at the city landfill after April 8, 1994, would trigger application of the 30-year Subtitle D post-closure monitoring requirements, costing $2 million or more, when the existing landfill could operate only until October 1995, the mayor's veto would have a permanent and devastating economic impact on the citizens of Jasper. However, the wisdom and advisability of the mayor's veto are not at issue before us; we will not interfere with the discretion granted to elected officials. The only question to be answered by this Court is the legality of the mayor's veto.
In response, Woods contends that the trial court ruled correctly and that its judgment cannot be reversed, given the ore tenus standard of review, because the court heard expert testimony that supported the judgment. *Page 728 
He points out that if the city council's prohibition of organic waste disposal at the landfill is upheld, then the portion of the landfill where that waste had been disposed of would have to meet ADEM's closure requirements within 180 days, and that meeting those requirements would materially change the nature of the landfill in such a way that it could accept only inert materials. Furthermore, Woods argues that Wingo's expert testimony was correct — that once the organic waste portion of the landfill was closed, the city's permit to dispose of that waste at the landfill would be lost and it could take up to two years to obtain a new solid waste landfill permit.
 VI.
We note that the only conflict in the testimony given by the various experts presented by Woods and the city council involves the effect of a cessation in disposal of organic waste at the Jasper city landfill on the city's permit to dispose of such waste and how long it would take ADEM to process an application for a permit to construct a new Subtitle D solid waste landfill. Although Wingo's testimony on such matters would normally prove helpful, Wingo being the city engineer, we believe that the testimony of Robertson, the chief of the section of ADEM that controls solid waste landfill permits, is authoritative. Thus, we conclude that there is no question of fact to which the ore tenus standard of review argued for by Woods would apply, and we apply the law to the facts de novo. See Justice, supra, and Fouts, supra.
We conclude that the city council's resolutions temporarily prohibiting the disposal of organic waste at the Jasper city landfill will not cause so lengthy a change in the status of the landfill that the resolutions have an effect of "permanent operation." Thus, the trial court erred in ruling that the resolutions were of "permanent operation" and that the mayor's veto of the resolutions was valid. Accordingly, we reverse the judgment and remand this cause for the trial court to take actions consistent with this opinion.
REVERSED AND REMANDED.
MADDOX, ALMON, SHORES, HOUSTON, KENNEDY and INGRAM, JJ. concur.
[1] Solid waste includes organic, or putrescible, wastes, such as household garbage; inert materials, such as construction/demolition debris; and rubbish, or nonputrescible wastes. ADEM Admin. Code R. 335-13-1-.03. Solid waste does not include hazardous wastes or medical wastes. Id.
[2] 42 U.S.C. § 6941 et seq.