YATES, Judge.
On March 17, 1994, the trial court divorced the parties, incorporating into the final divorce judgment an agreement between the parties. The agreement provided, in part:
“8. The parties have accumulated cattle, farm equipment, supplies, vehicles, and other miscellaneous farm/personal properties that are-used in the Husband’s farm operations in Henry County, Alabama. Other than the two pieces of real estate and residences situated thereon and described above, all of the real estate mentioned herein is used in the Husband’s business as a farmer and shall continue to be used as such after the divorce so long as the Husband continues to farm. As further periodic alimony, the Husband shall pay to the Wife one-half of all net profits derived from his farming business after deduction of $2,000,00 periodic alimony and $2,000.00 for his personal living expenses. Also, any liquidation of the aforementioned farm assets shall be considered in arriving at the net profits due the parties.”
Additionally, the agreement provided that the parties shall own as tenants-in-common certain land used in the husband’s farming operation.
On March 7, 1996, the wife petitioned the court to order the husband to provide her with an accounting of the farming profits for 1994 and 1995, and to hold him in contempt. She alleged that the husband had not paid her her share of the farming profits for those years, as required by the divorce agreement. Following an ore tenus proceeding, the court, on August 21, 1996, entered a judgment for the wife. The husband appeals, following the denial of his post-judgment motion.
The parties had operated a profitable farming business for approximately. 40 years. The dispute in question arose from the filing of the husband’s 1994 and 1995 tax returns. Jim Giganti,[1] the wife’s tax return preparer, reviewed the husband’s 1994 and 1995 tax returns, canceled checks, bank statements, and accounting records. Giganti testified *500 that the husband had made certain “prepayments” in 1994 and 1995. Under the IRS rules, farmers are allowed to make a prepayment of expenses, whereby they may pay for expenses such as chemicals, seed, and fertilizer for the upcoming farming year, yet take a deduction for tax purposes in the particular year in which the prepayment is made. The effect of making a prepayment would be to increase the farm expenses in the year it was made, thereby reducing the net profit for that year. Giganti stated that the husband had made prepayments of $165,421 in 1994 and $123,880 in 1995. Giganti determined that these payments were prepayments, because the checks were written in the last few days of the tax year. Giganti, however, testified on cross-examination that it was possible that the payments made at the end of the tax years 1994 and 1995 were payments made to satisfy existing debts and were not prepayments. He stated that in order to be certain that the payments were prepayments, one would have to “look behind” the checks and examine the invoices, which, he said, he did not do.
The husband received $185,405 in crop insurance proceeds in 1995. Giganti testified that the IRS rules permit a farmer who receives crop insurance proceeds to elect to defer those proceeds to the following tax year. Giganti stated that a farmer who chooses to defer crop insurance proceeds to the following tax year must report the proceeds on his tax return in the year in which they were received and indicate in the appropriate area on the return that he wishes to defer to the following year. Giganti testified that the insurance proceeds received by the husband were not reported on the husband’s 1995 tax return and that there was no indication on the return that he had chosen to defer the proceeds to the following tax year. Giganti discovered that the husband had received the proceeds, because they were listed in the husband’s accounting records and on a profit-loss statement, which Giganti reviewed. Giganti stated that had the proceeds been reported in 1995 and not deferred to the following year, it would have increased the farm profits for 1995.
Sidney Walker, who has been the husband’s CPA and tax preparer for 25 years, testified that the IRS permits farmers to declare crop insurance proceeds in the year received or to elect to defer them to the following tax year. He stated that the failure to indicate in the appropriate area on the husband’s 1995 tax return that the husband was deferring the insurance proceeds to the following tax year was a clerical oversight. Walker testified that the insurance proceeds were listed on the husband’s financial statement and his profit-loss statement as deferred income to be declared in 1996. He further stated that the husband is not precluded from deferring the insurance proceeds to the following year because of the failure to indicate on the return his wish to do so. Giganti also stated that the failure to indicate a deferment on the return would not preclude the husband from deferring the proceeds, because he could amend the return or could write a letter to the IRS explaining that the failure to indicate a deferment on the return was inadvertent.
The husband testified that he made some prepayments in 1994, but made no prepayments in 1995. He stated that the payments made late in the year were not prepayments, but were instead payments to satisfy existing debts. He stated that he had borrowed approximately $200,000 from Production Credit Association in 1994 in order to satisfy his existing debts. He also stated that he had had a poor crop in 1995, thus the receipt of the crop insurance proceeds, and that he had had to borrow approximately $100,000 in order to satisfy his debts in 1995, because the insurance proceeds were insufficient to completely satisfy all of his debts for that year. Finally, the husband testified that the wife had never been involved in the business aspect of the farming operation, but that she had been aware for years that he has borrowed money in order to satisfy year-end debts, has made prepayments, and has made efforts to equalize or reduce his tax liability.
The court’s order states:
“After a review of the evidence, the Court finds that the prepayments that were made by the [husband] and taken as deductions on his tax returns, were legiti *501 mate, and were properly used by the [husband]. However, in future years, the [husband] should consult the [wife], since she is a co-owner of the property, as to whether these payments should be taken as deductions.
“The Court -finds that the [insurance] proceeds received by the [husband] should have been reported in the year received. Because the [insurance] proceeds were not properly reported, the [husband] owes the [wife] the amount of $70,508.50, as her share of net profits for the years 1994 and 1995. Said sum is to be paid by the [husband] within sixty (60) days.
“In the future, if [insurance] proceeds are to be deferred, a joint decision will be made by the parties.”
The husband contends that the court erred in modifying the divorce judgment to give the wife decision-making authority in the tax-planning aspects of the farming operation. We note that when a court is presented evidence ore tenus, its judgment will be presumed correct if supported by the evidence; that judgment, however, is subject to revision and review. Moody v. Moody, 641 So.2d 818 (Ala.Civ.App.1994)
Paragraph 8 of the parties’ divorce agreement, which provides that the wife is to receive one-half of the net profits derived from the farming operation as additional periodic alimony, does not contemplate the wife’s having any decision-making authority regarding the business or tax-planning aspects of the farming operation.[2] The court’s order requiring the husband to consult the wife before making decisions such as whether to make prepayments or to defer crop insurance proceeds works a modification of the parties’ original agreement. In his post-judgment motion, the husband contended that the court’s judgment exceeded the scope of the relief sought, because there was no petition to modify the divorce judgment pending, but rather, only a petition for an accounting and a rule nisi. This court has held that “a trial court commits reversible error if it modifies alimony provisions of a divorce judgment when no petition to modify has been filed and no oral request for modification has been made.” Hickman v. Hickman, 680 So.2d 314, 315 (Ala.Civ.App.1996). A review of the record reveals that the wife did not petition the court to modify the divorce judgment, either in writing or orally, but sought only an accounting and a rule nisi; therefore, the court erred in modifying the divorce judgment to grant the wife decision-making authority with respect to the tax-planning aspects of the farming operation.
Although we hold that the court erred in modifying the divorce judgment to grant the wife decision-making authority with respect to whether to make prepayments or to defer crop .insurance proceeds, she is, nevertheless, entitled to an accounting and a division of the net profits from the farming operation. Paragraph 8 of the divorce agreement is clear and unambiguous; it provides that the wife is to receive one-half of the net proceeds from the farming operation. Therefore, an accounting should be provided at the end of each tax year to determine the amount of the farming profits, if any, and those profits should be divided equally. Upon division of the profits, should the husband choose to make prepayments for the upcoming tax year, he may do so with his share of the profits. Additionally, this is not to say that the wife cannot contribute her share of the profits to prepayments. She may very well choose to do so, because both parties have a joint interest in the success of the farming operation.
The husband next contends that the court erred in requiring him to claim the insurance proceeds in 1995, and in not allowing him to defer them to the following year, thus finding that he owed the wife $70,508.50 as her share of net profits for 1994 and 1995. I.R.C. § 451(d) (1997), states, in part:
“Special Rule for crop insurance proceeds or disaster payments. — In the case of insurance proceeds received as a result of destruction or damage to crops, a taxpayer reporting on the cash receipts and disbursements method of accounting may elect to include such proceeds in income for the taxable year following the taxable *502 year of destruction or damage, if he establishes that, under his practice, income from such crops would have been reported in a following taxable year.”
The procedure for making the election under § 451(d) is set forth in Treas. Reg. § 1.451-6(b)(1) (as amended in 1977), which provides:
“Time and manner of making election. The election to include in gross income insurance proceeds received as a result of destruction of, or damage to, the taxpayer’s crops in the taxable year following the taxable year of such destruction or damage shall be made by means of a statement attached to the taxpayer’s return (or an amended return) for the taxable year of destruction or damage. The statement shall include the name and address of the taxpayer (or his duly authorized representative), and shall set forth the following information:
“(i) A declaration that the taxpayer is making an election under section 451(d) and this section;
“(ii) Identification of the specific crop or crops destroyed or damaged;
“(in) A declaration that under the taxpayer’s normal business practice the income derived from the crops which were destroyed or damaged would have been included in this gross income for a taxable year following the taxable year of such destruction or damage;
“(iv) The cause of destruction or damage of crops and the date or dates on which such destruction or damage occurred;
“(v) The total amount of payments received from insurance carriers, itemized with respect to each specific crop and with respect to the date each payment was received;
“(vi) The name(s) of the insurance carrier or carriers from whom payments were received.”
Walker testified that the husband uses the cash-basis method of reporting income, as required by § 451(d). He further testified that it was the husband’s custom to “carry over” his crop and sell it in the following taxable year, thereby reporting the income from such crops in a following taxable year, as required by § 451(d). Additionally, it is undisputed that the husband failed to make a proper election under § 451(d), as required by Treas. Reg. § 1.451-6(b)(1). That failure, however, does not preclude the husband from making the election to defer the insurance proceeds to the following year. Section 1.451-6(b)(1) provides that the statement of election may be attached to an amended return. Further, the Commissioner of the Internal Revenue Service has held that a taxpayer who fails to make a proper election under § 451(d) is not precluded from making the election, but, rather, may make the election by filing an amended return and attaching a statement to the return containing the information required in § 1.451-6(b)(1). Rev. Rul. 74-145, 1974-1 C.B.
When a trial court improperly applies the law to the facts, no presumption of correctness exists as to that court’s judgment. Jasper City Council v. Woods, 647 So.2d 723 (Ala.1994). We conclude that the husband was entitled to make the election to defer the crop insurance proceeds to 1996, and that the court erred in requiring him to report the proceeds in 1995, the year in which they were received. We, therefore, reverse the judgment and remand the case for the trial court to calculate any profits that may be owing to the wife from the farming operation, without taking into consideration the insurance proceeds received by the husband in 1995.
REVERSED AND REMANDED WITH INSTRUCTIONS.
MONROE and THOMPSON, JJ., concur.
CRAWLEY, J., concurs specially.
ROBERTSON, P.J., concurs in the result.

. Giganti is the city clerk of Abbeville. Although he is not a CPA, he has a degree in accounting and has been operating an accounting Arm for approximately 10 years. In his practice, he has handled several farm accounts.

. We note that the parties’ divorce agreement was drafted by the wife's attorney.