PER CURIAM.
Margaret Ann Harrison (“the wife”) appeals from a June 25, 2015, order of the Winston Circuit Court (“the trial court”) declaring a prenuptial agreement (“the agreement”) entered into between the wife and Boyde Jerome Harrison (“the husband”) to be enforceable in a pending divorce proceeding between the parties. We affirm the judgment of the trial court.
Facts and Procedural History
The parties were married December 11, 1985. They signed the agreement on the morning of their wedding. In August 2011, the wife filed a complaint for a divorce in the trial court. The husband filed his answer, asserting various affirmative defenses, and a counterclaim for a divorce. In his answer and counterclaim, the husband asserted that the agreement controlled .the division of assets and debts in the divorce proceeding. The wife filed a reply to the husband’s counterclaim in which she asserted that the agreement had been made void on May 22, 2010. The husband filed a motion to bifurcate the trial on the issue of the validity of the agreement from the divorce trial, which was granted. ■
On April 11, 2014, the trial court held a trial on the issue of the validity of the agreement. During the trial, the husband filed a “motion for a judgmént as a matter of law” pursuant to “Rule 50(a).” We noté that Rule 50(a), Ala. R. Civ. P., is applicable only in cases involving a jury trial and, therefore, would not apply in this case. We presume that the husband intended to file a motion for a judgment on partial findings, pursuant to Rule 52(c), Ala.. R. Civ. P., but it does not appear that the trial court ruled on that motion.
The testimony and other evidence indicated the following. According to the wife, in 2010 she found inappropriate text messages between the husband and another woman. The wife found the husband and the. other woman at the husband’s office after working hours one night. The wife testified that the husband asked her not to leave him. The wife, unbeknownst to the husband at that time, sought the advice of an attorney regarding how to void the agreement. The wife testified that she then prepared a list of items that she believed were necessary for the, parties to .stay married (“the list”). The last item ,on\the list read, in pertinent part:
“I am willing to do this and put things behind us if you will show me that you *484 are committed to the future of our marriage by doing away with the [agreement]; This will be a sign to me that you mean what you say and that you are committed to making our marriage .work. I also want my name on everything with yours, like other married couples .... ”
The wife testified that she presented the list to the husband while both parties were at home, that the husband wrote “I agree to this” on the list, and that they both signed and dated the list after they had discussed each item. The-wife testified that the husband then retrieved the agreement from a safe and that the husband drew an “X” across the front of the, agreement. The wife testified that she wrote “voided 5/22/10” on the agreement and that both she and the husband wrote their initials on the front page of the agreement. On the signature page of the agreement, the wife wrote: “This agreement is voided as of 5/22/10 per Jerry Harrison, M.D. and Margaret Harrison. This copy and all other copies voided.” The wife testified that she signed her name to that portion of the agreement and that the husband placed his initials where she had signed.
In contrast, the' husband testified that the wife had presented the list to him while he was busy at work. The husband testified that, at the time, the parties were preparing to go on an extended vacation to Italy and he was attempting to complete his review of medical charts of patients of his medical practice and of patients of núrsing homes for which he provided services. The husband also testified that the parties had attended the funeral of a- close friend that day. The husband testified that it was the wife’s (and his) normal practice to prepare lists to discuss issues, -and the husband testified that he signed the list so that the wife would leave and he could finish his work. The husband testified that he had no memory of signing or initialing the agreement at that time. The husband testified that, had he known that the wife had consulted an attorney, that his marriage was in jeopardy, or that the wife was attempting to modify or void the agreement, he would have consulted an attorney as well. The husband denied that he agreed to void or modify the agreement. The parties continued to live together until August 2011, which is when the wife asserts that she discovered that the husband was having an affair with another woman. The wife, without notifying the husband of her intentions, filed a complaint for a divorce in the trial court. The wife testified that she and the husband then met and discussed the possibility of reconciliation. Each party brought a list of talking points to that meeting. One item on the wife’s list read: “Pre-nup before lawyer and notarized (null and void).” Regarding that statement, the wife testified: “It’s not for it to be done. It had already been done.... [The husband] requested it be done before a lawyer and notarized. He had requested that of me.” The husband testified that, at that meeting, the wife told him that she wanted to “take the prenuptial, get lawyers, rescind it, and have it notarized.” The husband testified that he first learned that the wife was claiming that the agreement had purportedly been voided in 2010 after the wife had filed a complaint for a divorce in 2011.
Dr. Richard Roper testified as an expert in forensic document examination on behalf of the wife. Dr. Roper testified that the wife provided him documents that were identified as containing “known signatures and initials” of the husband. Dr. Roper testified that he performed a comparison study between the handwriting on the agreement and the “known” sources of the husband’s handwriting. Dr. Roper testified that the “known” samples that were provided to him all had variations. Dr. *485 Roper’s opinion was that the husband’s handwritten initials on the first page and on the signature page .of the agreement were “very probably written by the writer of the known signatures or initials,” although he agreed that there were a range of opinions that a document examiner could give in comparing handwriting samples. On cross-examination, Dr. Roper testified that, if a person “made a study and worked toward that end, they could do a pretty good rendition [of another person’s handwriting].’’ Dr. Roper also testified that he could not completely rule out that the handwritten initials of the husband were written by someone other than .the husband. Dr. Roper further admitted that the handwritten initials of the husband on the front of the agreement appeared different from the handwritten initials of the husband on the signature page of the agreement.
■ On June 25, 2015, the trial court entered an order finding the agreement to be valid and enforceable in the divorce proceeding. On July 23, 2015, the wife filed a motion to alter, amend, or vacate the trial court’s order. On October 5, 2015, the trial court entered an order denying the wife’s motion. On November 4, 2015, the wife filed her first notice of appeal to this court.
On June 10, 2016, this court issued an opinion holding that the wife’s appeal was from a nonfinal judgment and remanding the cause to the trial court to determine if certification of the June 25, 2015, order pursuant to Rule 54(b), Ala. R. Civ. P., would be appropriate. Harrison v. Harrison, 213 So.3d 584 (Ala. Civ. App. 2016). We ordered that unless such a certification was made within 14 days, the appeal would be dismissed. On June 10, 2016, the wife filed a motion requesting that the trial court enter an order, pursuant to Rule 54(b), certifying its June 25, 2015, order as final. The husband filed a response opposing Rule 54(b) certification. On June 28, 2016, .having received no. certification order, this court dismissed the appeal. On July 5, 2016, the. trial court entered an order certifying the June 25, 2015, order as final pursuant to Rule 54(b). The wife timely filed a notice of appeal to this court on July 26, 2016.
Discussion
The facts presented to the trial court regarding the issue whether the agreement had. been voided were disputed. Because the trial court entered its order following a trial at .which testimony was received, the ore tenus standard of review applies to the resolution of any disputed factual issues. “When evidence is presented ore tenus in a divorce case, the judgment of the trial court premised on findings of fact that were based on that evidence is presumed correct and will not be set .aside on appeal absent plain .and palpable error.” Garrett v. Garrett, 637 So.2d 1376, 1378 (Ala. Civ. App. 1994) (citing Bailey v. Bailey, 594 So.2d 166 (Ala. Civ. App. 1992)).
The trial court’s detailed order essentially found that the wife did not prove that the parties had agreed in 2010 to void the agreement and that the parties had failed to enter into a valid postnuptial agreement in 2010 that would have voided the agreement. The order stated, in pertinent part, as follows:
“The parties married in 1985, and signed an antenuptial agreement shortly before the marriage. -Throughout the marriage, the parties experienced marital difficulties. In May 2010, the parties were again having difficulties. [The wife] claims that [the] husband was involved in an extramarital affair with another woman. The [husband] denies the claim, but this point is irrelevant because the only issue before this Court, at this time, *486 is whether the antenuptial agreement signed by the parties in 1985 was canceled, voided, or revoked by the parties; There 'is no contention that the 1985 prenuptial agreement was not valid when created. However, [the wife] claims that it was voided on May 22, 2010.
“In May 2010, the parties were preparing to travel to Italy for a two week vacation. During this period [the husband] spent more time at work than he normally did hi order to be certain all his paperwork was completed such that he was able to be away from his medical practice for two weeks. On May 22,2010, after attending a funeral for a close friend, [the husband] went to his office. Unbeknownst to [the husband], [the wife] had compiled a list of concerns that ... she wanted addressed in' order for the parties to remain married. Item number seven on. [the wife’s] list was that the parties must void the then-existing antenuptial ■ agreement. When [the husband] returned home from his office, [the wife] approached [the husband] with the list. This was a common practice used by both parties to address concerns ’ and issues throughout their marriage. Thé [wife] produced a copy of said list, at the bottom of the [list], below the handwritten words T agrée to this,’ is what the [wife] purports to be the [husband’s] signature. In addition, the [wife] produced a copy of the 1985 antenuptial agreement which has been ‘crossed through, marked with the words ‘Voided '5/22/2010’ and the parties’ initials. On the signature page of the ante-nuptial agreement, underneath the notary, is written, ‘This agreement is voided as of 5/22/2010 per Jerry' Harrison, M.D., and Margaret Harrison. This copy and all other copies voided,’ under which the parties’ initials appear again, along with the date.
“[The wife] testified that, prior to presenting her list to [the husband], she had met with her lawyer but did' not disclose this fact to [the husband]. [The husband] testified he did not believe that the marriage was in jeopardy, and further testified that he has no memory of voiding the antenuptial agreement, but may have in fact signed [the wife’s] list in an effort to pacify her before they left on then- two week vacation to Italy. [The husband] testified that he never believed that the antenuptial agreement had been nullified. It wasn’t until after August 2011, when [the wife] filed for divorce, that [the husband] first learned that [the wife] claimed the antenuptial agreement had been voided.
“I. THE . 1985 ANTENUPTIAL AGREEMENT WAS NEVER VOIDED BY THE PARTIES
“The handwriting on the documents presented by the [wife] was examined by expert witness Dr. Richard A. Roper though a comparison study, • using ' ‘known sources’ of [the husband’s] writing. It is Dr. Roper’s qualified opinion that the questioned signatures were very probably written by the writer -of the known signatures or initials- on the purported ‘voided antenuptial agreement.’ [The wife] provided Dr. Roper -with the ‘known handwriting samples.’ While, this fact does not make Dr, Roper’s testimony inadmissible, the fact that [the wife] provided the samples to Dr. Roper coupled with the .fact that Dr. Roper never saw [the husband] , actually write the ‘known samples’ lessens the evidentiary ‘weight' of Dr. Roper’s testi-:mony in the view of this Court. .This Court is not fully convinced that .the known handwriting samples provided by [the wife] to Dr. Roper are in fact [the husband’s] own handwriting.
*487 “[The wife] testified that in September 2011, after her complaint for divorce was'filed she and [the husband] met for dinner where she presented [the husband] with another list which .contained the item ‘Pre-nup before lawyer and notarized, (null .and void).’ Even after filing for divorce and asserting that the ante-nuptial agreement had been voided, [the wife] still had in her possession a list asking that the antenuptial [agreement] be voided before a lawyer and subscribed by a notary. The Court finds that if the parties had manifested an intent to void the antenuptial agreement on May 22, 2010, the discussion of the antenuptial agreement and the suggestion of a lawyer and a notary would have been unnecessary, and its very‘existence supports [the husband’s] position that the antenuptial [agreement] had not been voided.
“II. THE PARTIES FAILED TO CREATE Af] POSTNUPT[I]AL AGREEMENT WHICH VOIDED OR MODIFIED THE 1985 ANTENUPTIAL AGREEMENT.
“Antenuptial agreements are valid in the State of Alabama. Barnhill v. Barnhill, 386 So.2d 749 (Ala. Civ. App. 1980). However, in order for these agreements to be valid, the agreement must be shown to be ‘just and reasonable.’ Id. Barnhill lays out the standard for determining the validity of an antenuptial agreement:
“‘An antenuptial agreement will be held valid as just and reasonable if the [party seeking to enforce the agreement] is able to show that certain conditions have been met. [The party seeking to enforce] has the burden to show that the - consideration was adequate and that the entire transaction was fair,-just and equitable from the [charged party’s] point of view or that the agreement was freely and. voluntarily entered into by the [charged party] with competent independent' advice and full knowledge of [that party’s] interest in the estate and its approximate value.’.
“This same two-prong standard is used in determining the validity of post-nuptial agreements. Tibbs v. Anderson, 580 So.2d 1337 (Ala. 1991).
“This Court finds that the May ,2010 document fails prong one of the Barnhill test because the evidence is insufficient to support the contention that adequate consideration existed in the creation of the; purported postnuptial agreement. [The wife]'argues that the act of staying married to [the husband] constituted consideration sufficient to sustain the transaction. Howeyer, [the husband] has testified that he was unaware that the marriage was in jeopardy.
“This Court finds that the May 2010 document fails prong two of the Barnhill test because the evidence is insufficient to support the contention that consideration was adequate and that the entire transaction in the present case was fair, just and equitable from the husband’s point of view.
“In Mayer v. Mayer, 628 So.2d 744 (Ala. Civ. App. 1993), the parties involved entered into a postnuptial agreement after twelve years of a stressful, distrustful, and unhappy marriage.' Furthermore, the agreement was entered into after an intense argument between the parties, and. the husband testified that he had signed the document in an attempt at reconciliation-. The court in that case determined that, due to the circumstances surrounding the creation of the agreement, insufficient evidence existed to prove that the agreement was fair and just from the husband’s^ point of view.
*488 “Similarly, the facts surrounding the present case do not provide sufficient evidence that the agreement was fair and just from [the husband’s] point of view. The time period during which the agreement was created was fraught with the wife’s allegations of an extra-marital affair, the death of a close friend and funeral on the day the antenuptial [agreement] was allegedly voided, plus [the husband was] spending longer hours than normal at work preparing to leave the country on a two week vacation with [the] wife. Like the husband in Mayer, [the husband here] has testified that he may have signed what [the] wife asked him to sign without the opportunity to fully understand what she was asking of him. Due to the similarities [between] Mayer and the case at hand, this Court is convinced that the agreement was not ‘fair, just and equitable’ from [the husband’s] point of view, and thus also fails the second prong of the Barnhill standard. The purported post-nuptial agreement fails the Barnhill standard as a whole, and the Court finds the agreement to be invalid.
“It is the finding of this Court that the antenuptial agreement entered into by the parties in this case prior to their marriage in 1985 is valid. Any attempts to void the agreement failed and the 1985 prenuptial agreement remains i[n] full force and effect.”
Regarding the finding that the parties did not agree in 2010 to void the agreement, the evidence was in conflict. The wife argues that the trial court’s finding is plainly and palpably wrong. The wife argues that her testimony, in conjunction with the testimony of the handwriting expert, was credible and “should have been sufficient for the court to determine that the parties had intentionally and successfully voided the[ ] agreement.” Credibility determinations, however, are for the trial court. See Lee v. Jackson Cty. Dep’t of Pensions & Sec., 470 So.2d 1294, 1296 (Ala. Civ. App. 1985) (“One primary function of a trial court is to determine the credibility and the weight of any and all of the evidence in its effort to attempt to the best of its ability to' ascertain the truth of the matter in a non-jury trial.”).
The evidence surrounding the alleged voiding of the agreement was disputed. The wife testified that the husband voluntarily initialed the agreement in 2010 to indicate his intent to void the agreement. In contrast, the husband testified that he did not remember signing or initialing the agreement in 2010 and that he would have consulted with an attorney, as the wife had done, before agreeing to void the agreement. In weighing the conflicting evidence, the trial court found:
“Even after filing for divorce and asserting that the antenuptial agreement had been voided, [the wife] still had in her possession a list asking that the ante-nuptial [agreement] be voided before a lawyer and subscribed by a notary. The Court finds that if the parties had manifested an intent to void the antenuptial agreement on May 22, 2010, the discussion of the antenuptial agreement and the suggestion of a lawyer and a notary would have been unnecessary, and its very existence supports [the husband’s] position that the antenuptial [agreement] had not been voided.”
With regard to the handwriting expert’s testimony, the trial court specifically found:
“[T]he fact that [the wife] provided the samples to Dr. Roper coupled with the fact that Dr. Roper never saw [the husband] actually write the ‘known samples’ lessens the evidentiary “weight’ of Dr. Roper’s testimony in the view of this Court. This Court is not fully convinced *489 that the known handwriting samples provided by [the wife] to Dr. Roper are in fact [the husband’s] own handwriting.”
The evidence further indicated that the “known samples” that Dr. Roper used to compare to the purported handwritten initials of the husband on the agreement were actually photocopies of signatures allegedly written by the husband. The trial court acted within its discretion in determining the credibility of the witnesses and the weight of the evidence presented to it. Lee, 470 So.2d at 1296.
The trial court did not find'sufficient credible evidence to establish a mutual intent of the parties to void the agreement. “[W]hen evidence of the contracting parties’ intent is in dispute, a question- of fact arises for the factfinder, and its findings are presumed to be correct unless plainly erroneous or manifestly unjust.” ISS Int’l Serv. Sys., Inc. v. Alabama Motor Exp., Inc., 686 So.2d 1184, 1187 (Ala. Civ. App. 1996) (citing Fouts v. Beall, 518 So.2d 1236 (Ala. 1987)). The trial court’s findings are not plainly or palpably wrong and are presumed to be correct. See Ex parte Foley, 864 So.2d 1094, 1099 (Ala. 2003)(“[A]n appellate court may not substitute its judgment for that of the trial court.... To do so' would be to reweigh the evidence, which Alabama law does not allow.”). “It is our duty to affirm the trial court’s judgment if it is fairly supported by credible evidence, ‘regardless of our own view of that evidence or whether we would have reached a different result had we been the trial judge.’” Griggs v. Griggs, 638 So.2d 916, 918-19 (Ala. Civ. App. 1994) (quoting Young v. Young, 376 So.2d 737, 739 (Ala. Civ. App. 1979)).
The wife also argues that the parties entered into a “rescission agreement” in which, she says, the parties intended only to void the agreement but not to enter into a postnuptial agreement. The wife argues that the trial court erroneously applied the factors contained in Barnhill v. Barnhill, 386 So.2d 749 (Ala. Civ. App. 1980), to their purported postnuptial rescission of the agreement.
“In Barnhill, [this court] established the either/or test that we use here in determining whether the subject agreement is valid. This test may be applied in postnuptial agreements, as well as prenuptial agreements, and it states that, in order for an agreement to be valid, the one seeking to enforce the agreement ‘has the burden of showing that the consideration was adequate and that the entire transaction was fair, just and equitable’ from the other party’s point of view or ‘that the agreement was freely and voluntarily entered into ... with competent, independent advice and full knowledge of [any] interest in the estate and its approximate value.’ Barnhill, 386 So.2d at 751.”
Tibbs v. Anderson, 580 So.2d 1337, 1339 (Ala. 1991).
We need not address whether the enforceability of a postnuptial rescission of a prenuptial agreement requires satisfaction of the Barnhill requirements, because the trial court found that the wife did not prove that the parties had mutually agreed to take any action regarding the agreement in 2010 and that finding is supported by the evidence.
As we explained above, the trial court acted within its discretion in determining that the parties did not void the agreement and that the agreement is valid and enforceable. The wife does not assert that the agreement is invalid for a failure to comply with the requirements set forth in Barnhill, supra. Because the trial court’s findings of fact were supported by the evidence and, therefore, are presumed cor *490 rect, we affirm the judgment of the trial court. Garrett, 637 So.2d at 1378.
AFFIRMED.
Pittman and Thomas, JJ., concur.
Thompson, P.J., concurs in the result, without writing.
Donaldson, J., dissents, with writing, which Moore, J,, joins. ;