CLARENCE O. ANDERSON & another *vs.* JOHN DEVRIES & others.

Barnstable. February 10, 1950. — June 12, 1950.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.

*Way,* Private: location. *Easement. Beach. Deed,* Construction. *Real Property,* Registered land: encumbrances. *Land Court,* Exceptions: whether error harmful. *Error,* Whether error harmful. *Words,* "Beach."

Deeds conveying lots northerly of a street, which were given by a grantor who also owned a parcel known as lot B² having a width on the street of three hundred fifty feet and extending from the street southerly to a beach, and which also conveyed, as appurtenant to the granted lots, an undefined "right of way to the beach . . . along the westerly side of lot B²," where no way actually existed on the ground, were erroneously interpreted by a judge of the Land Court as meaning that such appurtenant right of way should be over an existing and used roadway running from the street across lot B² to the beach but located about sixty feet easterly of the west side of lot B².

A grantee of registered land extending from a street to a beach acquired it subject to a right of way to the beach and to rights in the beach where it was found that he took his deed with actual notice of the existence of all such rights and was not a purchaser for value in good faith with respect thereto.

In a proceeding in the Land Court, where it appeared that the owner of a group of lots situated northerly of a street and also of a parcel known as lot B² extending from the street southerly to a beach had conveyed the northerly group of lots with an appurtenant undefined "right of way to the beach . . .. along the westerly side of lot B²," a conclusion, that the grantees were entitled to a right of way over an existing and used twelve foot roadway running across lot B² to the beach from the street about sixty feet easterly of the west side of lot B², was required by findings that no way actually existed on the ground along the west side of lot B², that the twelve foot roadway was the only existing way across lot B² to the beach, and that the grantees, with the knowledge and acquiescence of the grantor, had used the twelve foot roadway instead of the location specified in their deeds in circumstances showing a tacit understanding or implied agreement to substitute the twelve foot roadway for the location so specified.

A conclusion by a judge of the Land Court, although based on an erroneous ruling, was not to be disturbed where his findings, unaffected by the ruling, required the same conclusion.

On the evidence at the hearing of a case in the Land Court, where it appeared that the owner of a parcel of land located between a street on the north and the sea on the south, without express mention of any right to use a beach fronting such parcel, had conveyed lots located north of the street to several grantees with a right of way over such parcel "to the beach," a finding was warranted that the grantees had a right to use the entire beach "for swimming, sunning, boating and other usual purposes in common."

PETITION, filed in the Land Court on June 17, 1947.

The case was heard by *Cotton*, J.

*A. W. Wunderly*, for the respondents.

No argument nor brief for the petitioners.

RONAN, J. The petitioners owned a certain parcel of land in Dennis known as lot B² and shown on a subdivision plan number 15396B in the Land Court. They allege that they conveyed a parcel of land to one DeVries and his wife and another parcel to one Reenstierna and his wife out of lot B²; that said lot B² was subject to an undetermined right of way over the westerly part thereof in favor of other lot owners as noted on the petitioners' certificate of title; and that the beach was subject to the rights of such lot owners. The petition, among other things, sought to have determined the area of the beach which the lot owners are entitled to use in common; and that the right of way previously granted for the benefit of other lot owners be defined. The respondents filed answers. Subsequent to the trial, the Reenstiernas sold their lot and their grantees were made parties respondents. A bank which held a mortgage on the Reenstierna lot has been paid and is no longer interested. The contentions of the Reenstiernas and the DeVrieses are substantially similar and for convenience we shall refer to the male grantees as the respondents. Their demurrers, which were overruled by the judge, have been waived. Twenty-six owners of lots which were conveyed out of another parcel known as lot A waived notice in writing and requested that the prayers of the petition be granted. Other lot owners in lot A filed answers claiming a right of way appurtenant to their lots over lot B² to the beach and the right to use the entire beach. The judge determined that

the owners of lots in lot A prior to April 30, 1946, whose deeds, when the lots were originally conveyed out of lot A, mentioned the right of way along the westerly side of lot $B^2$ to the beach, had a right of way substantially twelve feet wide over the location of an old roadway across lot $B^2$ to the beach, and that they had the right to use and enjoy the entire length of the beach fronting lot $B^2$. The case is here upon exceptions saved by the respondents. They make two principal contentions, first, that the judge erred in locating the right of way over the old roadway instead of along the westerly side of lot $B^2$, and, second, that he erred in deciding that these owners of parcels in lot A had the right to use the entire beach in front of lot $B^2$.

The petitioners in 1937 acquired, as tenants by the entirety, a strip of land in Dennis, fronting on Nantucket Sound for about three hundred fifty feet and extending inland for a distance of twenty-three hundred feet, and a certificate of title was issued to them from which it appears that the northerly portion was known as lot A and the southerly as lot $B^2$. The lots were separated by Beach Road. Beaton Road was laid out along the northwesterly side of lot A. The petitioners soon after they purchased the land began to develop it for a summer colony. They divided lot A into eighty-one lots and had sold seventy-five of them prior to their conveyances to the respondents of the lots out of $B^2$. These conveyances appear to be the first sales out of lot $B^2$. The chief inducement for the purchase of parcels in lot A was the right to use the beach for swimming, bathing, and sun bathing. These lot owners used an old roadway to cross lot $B^2$ to reach the beach, and they used the entire length of the beach in front of this lot for the purposes for which beaches at summer resorts are usually enjoyed. The northerly end of this roadway had for many years been located in the only opening in the bank on the southerly side of Beach Road. The roadway had run thence in a general southerly direction to the bank of the beach and then had turned northerly in horseshoe shape back over the east-

erly part of lot B² to the public street. The road was located about sixty feet east of the westerly boundary of lot B². This roadway "was the only opening in that section of lot B², had existed over the years, and was plainly discernible." Steps down to the beach had been maintained at the end of this roadway but the shore and bank had been materially eroded by two hurricanes and the steps had been swept away. An examination of the documents minuted on the petitioners' certificate of title referring to deeds out of lot A and the certificates on record made in accordance with such grants shows that a large number of the grants and certificates contained a substantially uniform clause which read as follows: "There is appurtenant to above described lot a right of way to the beach over the way shown on said plan as Beaton Road, and along the westerly side of lot B² as shown on Plan No. 15396B, in common with others entitled thereto." The judge stated that these deeds and certificates "disclose grants of an undefined right of way over part of lot B² to the beach" and that the plans do not show the location of the right of way.

The petitioners conveyed on April 30, 1946, a lot about sixty feet wide, which extended the entire depth of lot B² and was adjacent to the westerly boundary of lot B², to DeVries and his wife. This lot was bounded on the east by a right of way twelve feet wide. In May, 1946, the petitioners conveyed a lot to Reenstierna and his wife. This lot was bounded on the west by this right of way and, like the DeVries lot, extended the entire depth of lot B² and was a little more than fifty feet wide.[1] The way between these lots was the way determined by the judge as the one which the owners of parcels in lot A had the right to use to reach the beach. The judge found that this way was the only practical and reasonable way to go over the westerly part of lot B² to the beach and was the one constantly used for this purpose over the years; that all the circumstances

[1] The judge in his decision ordered that certificates of title be issued to DeVries and his wife and to Reenstierna and his wife, respectively, "bounding" each of their respective lots "by the center line of said 12 foot way." — REPORTER.

attending the conveyances of parcels in lot A, the character of the terrain, the proximity to the ocean, and the actual use of this way point to its location as the one intended by the parties; that the words "to the beach" carried with them the use of the beach; that the respondents were apprised of the only opening in the bank on Beach Road near their lots which ran toward the beach for a short distance; and that they were told that a way existed there running to the beach and that parties had rights in the beach. He found that they were not purchasers for value in good faith as to the right of way and the use of the beach.[1]

We think there was error in identifying the way existing across lot B² as the way described in the deeds and the certificates of title issued to purchasers of parcels in lot A. It is true that the width of the way described in these instruments was not defined therein, and if the parties did not agree upon a suitable and convenient width for the purposé for which the easement was created, the width could be fixed and determined by the court. *George* v. *Cox*, 114 Mass. 382. *McKenney* v. *McKenney*, 216 Mass. 248. *Barrett* v. *Duchaine*, 254 Mass. 37. But these deeds and certificates provided for a right of way "along the westerly side of lot B²." These instruments cannot be construed as locating a way anywhere in the westerly half or portion of lot B² which had a width of three hundred fifty feet, and they could not be interpreted, as the judge apparently ruled, as locating a way some sixty feet east of the westerly boundary of this lot. See *Hart* v. *Western Rail Road*, 13 Met. 99, 104; *O'Brien* v. *Schayer*, 124 Mass. 211, 212; *Commonwealth* v. *Franklin*, 133 Mass. 569, 570; *O'Brien* v. *Murphy*, 189 Mass. 353, 355–356; *Lipsky* v. *Heller*, 199 Mass. 310, 318; *Kaatz* v. *Curtis*, 215 Mass. 311, 314; *Siegel* v. *Starzyk*, 238 Mass. 291, 297; *Peavey* v. *Moran*, 256 Mass. 311, 314; *Buckley* v. *Gray*, 285 Mass. 110, 116.

---

[1] In his decision the judge ordered that the certificates of title to be issued to DeVries and his wife and to Reenstierna and his wife, respectively, should recite that "so much of" their respective lots "as is included within said 12 foot way and the beach is subject to the rights for the benefit of the dominant estates . . . to use said way and beach . . . ." — REPORTER.

The respondents, however, before they purchased their lots, had actual notice of the existence of a right of way over the old roadway in substantially the same place as it was subsequently located by the judge. A purchaser of a servient estate having notice of the existence of a way, even if such a way is not mentioned as an encumbrance in the owner's certificate of title, takes the land subject to the right of way. *Killam* v. *March*, 316 Mass. 646, 651. The respondents acquired no greater rights than their grantors had; and if the lot owners in lot A had acquired a right of way over the old roadway, the respondents purchased subject to their rights. There was, so far as appears, no right of way upon the surface of the earth along the westerly boundary of lot B². The lot owners in lot A claiming under deeds containing the said uniform clause were undoubtedly entitled to such a way, but instead of insisting upon their rights to this way they could accept and, with the knowledge and acquiescence of their grantors, use the roadway in lieu of the one granted, and this substituted way could not thereafter be altered or changed without the consent of all parties in interest. *Smith* v. *Lee*, 14 Gray, 473, 480. *Byrne* v. *Savoie*, 225 Mass. 338, 340. *Davis* v. *Sikes*, 254 Mass. 540, 547. *Boston Consolidated Gas Co.* v. *Oakes*, 279 Mass. 230, 237.

The judge found upon all the evidence that the owners of lots in parcel A used the existing twelve foot way under a claim of right and also the entire beach, believing that they had acquired these rights under their deeds; that the petitioners never denied them such use; and that they were informed by the petitioners that such rights would go with their deeds. It is undisputed that the parties to these deeds out of lot A knew that no right of way ever existed upon the surface of the earth along the westerly side of lot B² and that the only way which existed upon the surface of the land across that lot to the beach was the twelve foot roadway. We construe these findings of the judge to mean that these grantees were content with the acquiescence of the grantors to use this twelve foot way

although their deeds described another and nonexisting way. The effect of these findings is that the roadway had at least by a tacit understanding or an implied agreement been substituted for the way mentioned in the deeds. These findings required the general conclusion reached by the trial judge even though his conclusion was based upon an erroneous ruling made in interpreting the deeds. His subsidiary findings were unaffected by this ruling and his general conclusion, being correct upon his findings, is not to be disturbed because based upon such a ruling. *Reilly* v. *Selectmen of Blackstone*, 266 Mass. 503, 512. *Hamilton Manuf. Co.* v. *Lowell*, 274 Mass. 477, 487. *Slocum* v. *Natural Products Co.* 292 Mass. 455, 458. *Harvey's Case*, 295 Mass. 300, 304–305. *Rathgeber* v. *Kelley*, 299 Mass. 444, 446.

The respondents next contend that, whatever right of way the lot owners in lot A had to the beach, they had no rights beyond the high water mark, and if they had any rights on the land side of this mark then they had no rights beyond the width of the way. The primary meaning of the word beach is the land between the ordinary high water mark and the low water mark or the space over which the tide ebbs and flows. *Niles* v. *Patch*, 13 Gray, 254. *Litchfield* v. *Ferguson*, 141 Mass. 97. *Haskell* v. *Friend*, 196 Mass. 198, 201. *Burke* v. *Commonwealth*, 283 Mass. 63, 68. The term has a flexible meaning depending upon the setting in which it is employed and has been held to include the land to low water mark where the tide ebbs and flows in a territory not greater than one hundred rods from the high water mark. *Doane* v. *Willcutt*, 5 Gray, 328. *Hathaway* v. *Wilson*, 123 Mass. 359. In the instant case, we are dealing with a seashore resort where residents of a summer colony are given access to the beach. A right of way which would not permit them to travel seaward beyond the high water mark would not furnish access to the water for bathing and swimming and such a way would be worthless to them. It would be inconsistent with the manifest intention of the parties if these deeds and instruments were so construed

as to deprive these owners of land in lot A from reaching the water. They were given a way to the beach. There is no express mention of any right to use the beach. A beach as customarily understood by residents of seashore resorts comprises the land above the ordinary high water mark, "more or less well defined by natural boundary, or in the rear by a sea wall, providing a convenient and safe access to the water for bathing or for sun baths either before or after going into the water." *Lund* v. *Cox*, 281 Mass. 484, 491. *Hewitt* v. *Perry*, 309 Mass. 100, 104. The way to the beach carried with it the right to use the beach for the purposes for which the way was obviously intended. We do not agree with the respondents' contention that the use of the beach should be confined to an area not greater than the width of the right of way. The owners of parcels in lot A had used the entire beach with the assent of the petitioners, who in some instances stated to intending purchasers that they would have such right in the beach, and the respondents were told before they purchased "that parties had rights in the beach." A space on the beach no wider than the width of the way would hardly furnish a place adequate for the use and enjoyment of a large number of lot owners and their families and guests. The judge was not wrong in finding that these lot owners, that is, those claiming under deeds containing said uniform clause, had the right to use the entire beach on the sea side of lot B[2] "for swimming, sunning, boating and other usual purposes in common," and to this extent the lots of the respondents were servient estates to these prior vested rights. The use of the beach by these lot owners included whatever was reasonably necessary for the full enjoyment of the privilege granted. "When an easement or other property right is created, every right necessary for its enjoyment is included by implication." *Sullivan* v. *Donohoe*, 287 Mass. 265, 267. See also *Salisbury* v. *Andrews*, 19 Pick. 250, 255; *Melville Shoe Corp.* v. *Kozminsky*, 268 Mass. 172, 180; *Commonwealth* v. *Richardson*, 313 Mass. 632, 639.

In view of what has been said we need not discuss spe-

cifically the denial of such of the requests as have been argued. It is contended that as the allegations in the petition to the effect that the way between the respondents' lots was a newly created way were not denied in the answers of the respondents, such allegations are binding upon the petitioners. It is therefore contended that the judge was required to find that this was a new way, that it was a different way from any other way in lot B², especially from the old roadway. *Bancroft* v. *Cook*, 264 Mass. 343. These allegations, however, were not binding upon lot owners in lot A who filed answers and asserted their rights in the existing way over lot B² and their rights in the beach. Any admission against the petitioners arising out of the pleadings did not bind the lot owners who appeared and answered. *Kneeland* v. *Bernardi*, 317 Mass. 517, 520.

*Exceptions overruled.*