IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 4, 2020 Session

## STEVEN J. STANGE ET AL. v. HANK E. ROBERTS ET AL.

**Appeal from the Chancery Court for Maury County**
**No. 12-283      Christopher V. Sockwell, Judge**

_____

### No. M2019-01060-COA-R3-CV

_____

The owners of the dominant estate sued the owners of the servient estate of an easement to Tanner's Bar, a piece of land near a river. The trial court ruled that the easement was an easement appurtenant for ingress and egress only and did not entitle the dominant estate owners to engage in recreational activities at Tanner's Bar. The trial court further ruled that a member of the dominant estate family had to accompany all invitees to the easement. Having concluded that the intent of the easement was for the dominant estate owners to have the right to enjoy the river at Tanner's Bar, we reverse the decision of the trial court prohibiting recreational use. We have further determined that the trial court erred in requiring that a dominant estate family member be present with invitees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and THOMAS R. FRIERSON, II, JJ., joined.

Jacob Andrew Vanzin and David Hall King, Franklin, Tennessee, for the appellants, Steven J. Stange and Mary L. Stange.

Leland Bruce Peden, Columbia, Tennessee, for the appellees, Hank E. Roberts and Edna E. Roberts.

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

This case concerns real property located near the Duck River in Maury County, Tennessee and a dispute between adjoining land owners, the Stanges and the Robertses. At issue is access to property known as "Tanner's Bar," a piece of land on the river that is

a peninsula during part of the year and an island during other parts of the year, depending upon the water level.

Mary Gail Moser and her first husband, Jim Moser, originally owned all of the land at issue, which is now subdivided as Tracts 1, 2, and 3. In August 1997, after Mr. Moser's death, Ms. Moser[1] and her second husband, James Parr, conveyed Tract 1 to her son, Jimmy Moser. The general warranty deed ("1997 deed") included the following language:

> Grantee shall have the right of ingress and egress to Tanner's Bar, along the presently existing road traveling behind the mobile home now on this tract across the 5.98 acre tract to the North and East [Tract 3].

On April 14, 1999, Jimmy Moser executed a deed conveying Tract 1 to himself and his wife as tenants by the entirety. That deed included language identical to that quoted above from the 1997 deed. The same day, April 14, 1999, Ms. Moser and her husband conveyed Tract 2 to Jimmy Moser and his wife as tenants by the entirety.

In October 1999, Ms. Moser and her husband conveyed Tract 3 to the Robertses. The Roberts deed provides that the property is unencumbered except for the "restrictions and easements of record in Plat Book 11, page 305 of the Maury County, Tennessee Register of Deeds Office, easements granted in book R1399, page 159 [of] the Maury County, Tennessee Register of Deeds Office." The latter is a reference to the 1997 deed.

The Kuykendalls, neighboring landowners, filed a lawsuit against the Robertses and the Mosers concerning, in part, the ownership of Tanner's Bar. The parties eventually settled their lawsuit. In an order entered by the court in March 2006, the parties established a common boundary line that bisected Tanner's Bar so that the Robertses owned the eastern half and the Kuykendalls owned the western half.

In July 2010, Jimmy Moser and his wife sold Tracts 1 and 2 to the Stanges. The deed incorporates the "right of ingress and egress to Tanner's Bar" language quoted above from the 1997 deed.

The relationship between the Stange and Roberts families deteriorated. The Stanges filed suit against the Robertses in May 2012 for denying them access to their easement. According to the complaint, the Robertses "erected a fence across the said easement cutting off access to the Plaintiffs['] ingress/egress easement and placed eight "NO TRESPASSING" SIGNS . . . to deny Plaintiffs access to the Duck River along the ingress/egress easement." In November 2016, the Robertses answered and asserted

---

[1] After the death of her second husband, James Parr, Mary Moser Parr resumed use of the surname Moser. We will refer to her as Mary Moser or Ms. Moser throughout this opinion.

counterclaims for a declaratory judgment, to quiet title, and quia timet; and for damages due to trespass, slander, and libel of title. The Robertses disputed whether the Stanges had an easement appurtenant or, if they did, whether that easement entitled them to use the Robertses' property recreationally.

In August 2017, the Stanges sought permission to amend their complaint to add new causes of action as well as new parties, asserting that "the investigation of this case has revealed facts and law that were unknown to Plaintiffs at the time of the filing of the original Complaint." The trial court denied the Stanges' request to add new parties but allowed them to add causes of action. In their amended complaint, the Stanges added causes of action for impairment or obstruction of the river, a declaratory judgment regarding ownership of Tanner's Bar, a declaration of rights pursuant to the Tennessee Scenic Rivers Act of 1968, public ownership of the streambed, and denial of use of the river.

After a two-day bench trial, the court issued a memorandum opinion on March 12, 2019, finding that the Robertses are the owners of the upstream portion of Tanner's Bar (as stated in the March 2006 order); that there is an easement appurtenant that runs with Tract 1 only and gives the owner of Tract 1 an easement through Tract 3 to Tanner's Bar; and that the easement is for ingress and egress only and not for recreational purposes. The court further found that "guests must have the Stanges with them and/or the resident(s) of Tract 1" when using the easement. The court found that the Robertses had not proven their claims for trespass or slander of title. The trial court entered judgment on April 13, 2019, in accordance with the findings in its memorandum opinion. The court stated that all other claims for relief by the plaintiffs or the defendants were denied and dismissed.

The Stanges then filed a motion to amend or make additional findings of fact. On May 22, 2019, the trial court entered an order amending the judgment to add language including a legal description of the easement appurtenant. The Stanges have appealed.

In this appeal, we must determine (1) what kind of easement the Stanges have, (2) whether the easement entitles them to use Tanner's Bar for recreational purposes,[2] and (3) whether the other conditions placed upon the Stanges' use of the easement by the trial court are proper.

STANDARD OF REVIEW

---

[2] The Stanges draw a distinction between the right to be and remain on Tanner's Bar and the right to use Tanner's Bar for recreational purposes. For purposes of this opinion, we consider both categories of activity to fall within "recreational purposes."

In a civil case tried without a jury, we review the trial court's findings of fact de novo without a presumption of correctness, unless the evidence preponderates to the contrary. TENN. R. APP. P. 13(d); *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 414 (Tenn. 2013). The interpretation of a deed presents a question of law, which we review with no presumption of correctness. *Mitchell v. Chance*, 149 S.W.3d 40, 45 (Tenn. Ct. App. 2004); *see also Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

ANALYSIS

I. Nature of the easement.

The central question at issue is the nature of the easement granted to the Stange family by their deed. The Stanges argue that it is an easement appurtenant, as the trial court found. The Robertses assert that the easement should be classified as an easement in gross.

The term "easement" has been defined as "'a right an owner has to some lawful use of the real property of another.'" *Cellco P'ship v. Shelby Cnty.*, 172 S.W.3d 574, 588 (Tenn. Ct. App. 2005) (quoting *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996)). Although there are a number ways in which easements can be created, easements are divided into two broad categories: easements appurtenant and easements in gross. *Pevear*, 924 S.W.2d at 115-16. These two categories can be distinguished as follows:

> In an easement appurtenant, there are 2 tracts of land, the dominant tenement, and the servient tenement. The dominant tenement benefits in some way from the use of the servient tenement. Easements in gross are simply a personal interest or right to use the land of another which does not benefit another property, or dominant estate, thus easements in gross usually involve only one parcel. An easement appurtenant to land is favored over an easement in gross in Tennessee.

*Id.* at 116. An easement appurtenant runs with the land and "'may be enforced by subsequent purchasers of the dominant tenement against owners of the servient tenement.'" *Holder v. Serodino*, No. M2014-00533-COA-R3-CV, 2015 WL 5458377, at *8 (Tenn. Ct. App. Sept. 16, 2015) (quoting *Newman v. Woodard*, 288 S.W.3d 862, 865 (Tenn. Ct. App. 2008)). Because an easement in gross is considered a personal right, "the [easement holder's] rights are not attached to a dominant estate," *id.* (citing *Cellco P'ship*, 172 S.W.3d at 588), and "'[t]he beneficiary need not, and usu[ally] does not, own any land adjoining the servient estate,'" *id.* (quoting BLACK'S LAW DICTIONARY 586 (9th ed. 2009)).

- 4 -

In the present case, the trial court found that the easement from Tract 1 through Tract 3 onto Tanner's Bar is an easement appurtenant. As previously stated, Tennessee law favors easements appurtenant over easements in gross. *Pevear*, 924 S.W.2d at 116. As our Supreme Court has stated:

> If there be a dominant tenement to which the easement may conveniently attach and if the easement will add to the proper use and enjoyment of such dominant tenement, then the questioned clause will be construed to create an easement appurtenant, rather than a personal license or easement in gross.

*Lynn v. Turpin*, 215 S.W.2d 794, 796 (Tenn. 1948). Furthermore, "[s]ince the right is created by a clause in deeds, the paramount rule obtains that the intention of the parties is controlling as that intention is found to be evidenced by the language of the deed and the circumstances surrounding the conveyance." *Id.*

The Robertses assert that the language of the deed and the surrounding circumstances support the conclusion that this is an easement in gross. To support their argument, they point first to the contrasting language used with respect to ingress and egress to Tanner's Bar, described as a "right," and with respect to ingress and egress over a driveway, later in the deed, where the word "easement" appears. The Robertses argue that the drafters would have used the term "easement" in both instances if they had intended to create an easement appurtenant and not a personal license (easement in gross) regarding Tanner's Bar. Second, the Robertses aver that the circumstances surrounding the conveyance point to a personal license because Ms. Moser did not include the ingress and egress language when she deeded Tract 2 to her son and his wife in 1999. At trial, Ms. Moser gave the following testimony:

> Q. So let me ask you this question: If you know, why would you-all include that in the first Deed to your son and not include it in the second Deed?
> A. Because he already had it in the first one. He didn't need it in the second one.
> Q. In your mind, did you consider that to be something personal to your son?
> A. Yes.

We find the Robertses' arguments unavailing. The Court's analysis in *Lynn v. Turpin*, 215 S.W.2d at 794, is instructive. The operative language from the deed in the *Lynn* case stated as follows:

> The above property is a part of the Henry Cornett property that was conveyed to Evern Rogers, and wife on the 27th day of July, 1942, Evern

> Rogers is to have the privilege to get water from the well on this property sold to Criss Moore, with the hereditaments and appurtenances thereto appertaining, hereby releasing all claims to Homestead and dower therein. To Have And To Hold the said premises to the said parties of the second part, their heirs and assigns forever.

*Lynn*, 215 S.W.2d at 795. The Court noted that there was "no language to indicate a separation of the reservation of the water rights from the absolute conveyance of the habendum." *Id.* Furthermore, "[i]n determining the intention of the parties, subsequent deeds of the dominant and servient tenements are competent." *Id.* at 796. The Court in *Lynn* remarked that the water rights provision was "incorporated actually or by reference, in all deeds through which Complainant traces her title back to Rogers" and was expressly incorporated in the warranty deed by which the complainant acquired title. *Id.* at 795. Similarly, all deeds of conveyance to the defendant, owner of the dominant tenement, "contained the same provision for water rights as that . . . from the deed from Rogers to Tinnell [the original transferee of the dominant tenement]."[3] *Id.* Another factor considered by the Court in *Lynn* was the fact that, according to the answer, "the water was necessary to the proper enjoyment of the dominant tenement" and was "the only available and convenient water supply." *Id.*

All of the factors considered by the Court in *Lynn* support the trial court's conclusion that the easement in this case is an easement appurtenant. The 1997 deed by which Ms. Moser and her second husband transferred Tract 1 to Jimmy Moser provided, in pertinent part, as follows:

> For and consideration of love and affection, the property having previously belonged to the Grantee's father, and other good and valuable considerations, the receipt and sufficiency of all of which are hereby acknowledged, we, JAMES McDONALD PARR and wife, MARY GAIL MOSER PARR, have this day bargained and sold, and do by these presents sell, transfer and convey unto JAMES COLEMAN MOSER, his heirs and assigns, the following described tract or parcel of land lying and being in the Fourth (4th) Civil District of Maury County, Tennessee, and being more particularly described as follows:
>
> [Property description]
>
> *Grantee shall have the right of ingress and egress to Tanner's Bar, along the presently existing road traveling behind the mobile home now on this tract across the 5.98 acre tract to the North and East.*

---

[3] The provision stated: "This Deed also includes the water right to the well reserved in the Criss Moore deed." *Id.*

According to survey of Rex Northcutt, Tennessee No. 77, dated August 1, 1997.

Being a portion of property conveyed to Grantors in Deed Book 1133; Page 284 in the office of the Register of Deeds, Maury County, Tennessee.

*TO HAVE AND TO HOLD the above-described tract or parcel of land, together with all rights, titles, interests, easements, appurtenances, and hereditaments thereto belonging and pertaining unto the said JAMES COLEMAN MOSER, his heirs and assigns, in fee simple forever.*

(Emphasis added). As in *Lynn*, the language conveying the easement comes immediately after the property description. Also as in *Lynn*, there is no separation between "the right of ingress and egress to Tanner's Bar" and the fee simple conveyance of the habendum clause.[4] We emphasize that, in the present case, as in *Lynn*, the fact that the holders of the easement own land adjoining the servient estate provides strong support for the conclusion that the easement is an easement appurtenant rather than an easement in gross. *See Holder*, 2015 WL 5458377, at *8.

The Robertses assert that the use of the word "grantee" and the absence of the word "easement" demonstrate an intent to create an easement in gross. As the Stanges rightly point out, however, the deed in *Lynn*, like the deed at issue here, did not use the word "easement" or the word "appurtenant." In *Lynn*, the deed actually named a specific person, Evern Rogers, who was to have the "privilege to get water from the well on this property sold to Criss Moore." *Lynn*, 215 S.W.2d at 795. Nevertheless, the Court found the easement to be an easement appurtenant. *Id.* at 796. We conclude that use of certain words is not required to create an easement appurtenant.

With respect to the circumstances surrounding the conveyance in the present case, a look at the chain of title for both the dominant and servient estates reflects an intent by the parties to the original deed to create an easement appurtenant. We begin with the subsequent chain of title for the dominant estate, Tract 1, which was transferred from Jimmy Moser to himself and his wife as tenants by the entirety in 1999. That deed included the easement at issue with the following language:

---

[4] A habendum clause is "[t]he part of an instrument, such as a deed or will, that defines the extent of the interest being granted and any conditions affecting the grant. The introductory words to the clause are ordinarily *to have and to hold*." BLACK'S LAW DICTIONARY (11th ed. 2019).

We consider the intent expressed by the "heirs and assigns" language of the habendum clause to override the ambiguous meaning of Ms. Moser's affirmative response to the question whether she considered the ingress/egress provision to be something "personal" to her son.

> Grantee shall have the right of ingress and egress to Tanner's Bar, along the presently existing road traveling behind the mobile home now on this tract across the 5.98 acre tract to the North and East.

This is the exact language included in the original 1997 deed. In 2010, Jimmy Moser and his wife conveyed Tract 1 to the Stanges with a deed including language identical to that above with the exception of using the word "acres" instead of "acre." The inclusion of essentially the same language in all of the deeds in the chain of title since the 1997 deed is a strong indication that the grantors' intent was for the easement to run with the land, making it an easement appurtenant.

As to the Robertses' argument emphasizing the absence of the ingress/egress language in the deed conveying Tract 2, the Stanges assert that including that language would have been redundant. Jimmy Moser already owned Tract 1 when Ms. Moser and her husband conveyed Tract 2 to him; therefore, he already had access to Tanner's Bar by virtue of his ownership of Tract 1. There was no reason to include an additional easement in the conveyance of Tract 2. We believe the Stanges have the better argument here.

The subsequent deeds in the chain of title for the servient estate, Tract 3, also indicate that the parties to the original deed intended to create an easement appurtenant. Ms. Moser and her second husband conveyed the servient estate to the Robertses in 1999. That deed includes the following provision:

> James McDonald Parr and wife Mary Gail Moser Parr do hereby covenant with the said Hank E. Roberts, and wife, Edna E. Roberts, that they are lawfully seized and possessed of the above described tract or parcel of land, has a good and lawful right to sell and convey same, and that it is unencumbered except for setback lines, restrictions and . . . *easements granted in book R1399, page 159* [of] the Maury County, Tennessee Register of Deeds Office.

(Emphasis added). The referenced easement—at book R1399, page 159—is the easement to Tanner's Bar granted to Jimmy Moser in the 1997 deed.

The inclusion of the easement in all subsequent deeds of conveyance involving the dominant and servient estates supports the trial court's designation of the easement as an easement appurtenant.

Finally, as the Court stated in *Lynn*, we must consider whether "the easement will add to the proper use and enjoyment of [the] dominant tenement." *Lynn*, 215 S.W.2d at 796. This Court has recognized that "riparian land derives part of its value from its

proximity to water." *The Pointe, LLC v. Lake Mgmt. Ass'n, Inc.*, 50 S.W.3d 471, 475 (Tenn. Ct. App. 2000). Without the easement at issue, Tract 1 has no access to the Duck River. The right of ingress and egress to Tanner's Bar "add[s] to the proper use and enjoyment" of the Stanges' property. *Lynn*, 215 S.W.2d at 796.

In sum, we agree with the trial court's conclusion that the right of ingress and egress included in the 1997 deed is an express easement appurtenant.

## II. Recreational use.

The Stanges argue that the trial court erred in determining that the use of the express easement appurtenant "for recreational purposes is forbidden."

In construing an instrument creating an express easement, a court must attempt "'to ascertain and give effect to the intention of the parties.'" *Burchfiel v. Gatlinburg Airport Auth.*, No. E2005-02023-COA-R3-CV, 2006 WL 3421282, at *3 (Tenn. Ct. App. Nov. 28, 2006) (quoting 28A C.J.S. *Easements* § 57 (1996)). The parties' intention regarding "the purpose and scope of an easement conveyed by express grant is determined by the language of the deed." *Shell v. Williams*, No. M2013-00711-COA-R3-CV, 2014 WL 118376, at *4 (Tenn. Ct. App. Jan. 14, 2014); *see also Foshee v. Brigman*, 129 S.W.2d 207, 208 (Tenn. 1939). An "easement holder's use of the easement must be confined to the purpose stated in the grant of the easement." *Columbia Gulf Transmission Co. v. The Governors Club Prop. Owners Ass'n*, No. M2005-01193-COA-R3-CV, 2006 WL 2449909, at *3 (Tenn. Ct. App. Aug. 21, 2006). In this case, the deed states that the easement is for the purpose of "ingress and egress to Tanner's Bar." The Robertses assert that this phrase defines the limits of the uses to which the Stanges may properly put the easement—i.e., they may use the easement only to travel to Tanner's Bar from their property and return from Tanner's Bar to their property. The Stanges argue that the original parties intended for the easement holders to use the easement for recreational purposes and that such use is necessary to their enjoyment of the easement.

What is the purpose of an easement granting "ingress and egress to Tanner's Bar"? The trial court made the following relevant findings:

> As regards the extent of the easement as it pertains to Tanner's Bar, the Court notes that the easement itself does not give a description of the land but simply refers to "Tanner's Bar." This Court is left with the task of determining what that means. Clearly, Tanner's Bar is an end point, as any motorized or foot traffic must end at the waterline on Tanner's Bar. Thus, the logical end point would be the Duck River. Access to water is a valuable right. In addition, access to water in order to use it for recreation

purposes is also a valuable right. Ms. Parr [Moser] testified that the purpose of the easement was to give her son, Jimmy Moser, the ability to go to and enjoy Tanner's Bar. Ms. Parr also testified that she did not intend for strangers to go down to Tanner's Bar. This Court so finds that the easement as reflected in the original deed gives the Stanges the right to access Tanner's Bar and, eventually, the Duck River.

The trial court found ambiguity in the deed as to whether access to Tanner's Bar includes use of the bar for recreational purposes (such as boating, fishing, and picnicking) or mere access to the bar and the river. When a deed's meaning is in doubt, "'the court may consider the surrounding circumstances at the time the instrument was executed, the situation of the parties, and any practical construction of the instrument given by the parties themselves in determining their intention.'" *Cellco*, 172 S.W.3d at 595 (quoting 28A C.J.S. *Easements* § 146 (1996)).

There is strong evidence that the intent of the original grantors was for the easement holders to have the right to be and remain on Tanner's Bar. At trial, counsel for the Stanges asked Ms. Moser what use she and her first husband made of Tanner's Bar. She testified as follows:

> Q. . . . And you testified that you and Mr. Moser, the elder, would go down and you would hang out on the bar here and you would camp. Would you build campfires down there while you were down there?
> A. Yes.
> Q. And you would take a camper or a tent down there to camp?
> A. Both.
> Q. Did you guys fish while you were down there?
> A. Yes.
> Q. And swam, I assume, while you were down there?
> A. Yes.
> Q. What other kinds of things would you do when you were down there besides camping, fishing, swimming?
> A. The women would lay out in the lawn chairs at the end of the bar and get suntans and visit, and the men would fish and go up and down the river.

Counsel for the Stanges then asked Ms. Moser what rights she intended to convey when she granted the easement:

> Q. . . . So I guess my question would be, to get to a question, when you-all gave Mr. Moser, the younger, so let's call him "Jimmy Moser," when you-all gave Jimmy Moser the ability to access Tanner's Bar, when you wrote that into his Deed, did you mean for him to go down there and be able to camp and fish and swim and all that stuff?

- 10 -

A. Yes.

Q. So you intended, when you all gave him that access in his Deed, he could go down there, he could camp if he wanted to overnight, he could fish off the bar, is that correct?

A. Yes.

Q. He could swim, and his wife could sit in the lawn chair, as we've joked about, and sunbathe on the bar?

A. Yes.

Q. And so that was your intent when you gave him that right in his Deed?

A. Yes.

The above testimony reflects an intention on the part of the original parties to allow the easement holders to remain on and use Tanner's Bar once they arrived there. The Robertses emphasize Ms. Moser's testimony that she did not intend for "strangers" to make use of Tanner's Bar.[5] Her testimony does not make clear the meaning of the word "strangers." In any event, under the law, an easement appurtenant "run[s] with the land and may be enforced by subsequent purchasers of the dominant tenement against owners of the servient tenement." *Newman*, 288 S.W.3d at 865.

Even with an express easement, the intention of the parties may not be fully set out in the deed. For example, in *Burchfiel v. Gatlinburg Airport Authority*, 2006 WL 3421282, at *1, the plaintiffs conveyed to the Gatlinburg Airport Authority ("the Authority") an "access and utility easement for ingress and egress to and from property owned by the [Airport] Authority and Dolly Parton Parkway." The Authority later allowed a museum to be built on its property. *Burchfiel*, 2006 WL 3421282, at *1. With the approval of the planning commission, the Authority began to construct a sign on the easement, and the plaintiffs filed suit to enjoin further construction. *Id.* at *1-2. The trial court granted summary judgment in favor of the plaintiffs. *Id.* at *2. After setting out the previously cited principles governing the interpretation of express easements, the court in *Burchfiel* quoted with approval the following additional rule regarding the use of an easement: "'Where [an] easement is not specifically defined, it need be only such as is reasonably necessary and convenient for purpose for which it was created.'" *Id.* at *3 (quoting *Adams v. Winnett*, 156 S.W.2d 353, 358 (Tenn. Ct. App. 1941)). The *Burchfiel* court determined that construction of a sign was not "a logical extension or promotion" of the express purpose of the easement. *Id.* at *5.

In *Rogers v. Roach*, No. M2011-00794-COA-R3-CV, 2012 WL 2337616, at *1 (Tenn. Ct. App. June 19, 2012), this court had to determine whether a landowner had a claim for interference with her ability to use an access easement because her neighbors had erected fence posts preventing her from pulling her horse trailer along the easement.

---

[5] On redirect examination, plaintiffs' counsel asked Ms. Moser: "[D]id you intend for strangers to be able to go down and camp on Tanner's Bar and fish and do whatever?" She responded, "No, never."

The court cited the principle quoted above regarding what is "reasonably necessary and convenient" for the purpose for which the easement was created and found that agricultural use was part of the historical purpose of the easement. *Rogers*, 2012 WL 2337616, at *7-8. Because the landowner had presented sufficient evidence to establish the elements of interference with her use and enjoyment of the easement, the court reversed the trial court's dismissal of the claim and remanded for further proceedings. *Id.* at *11.

Although the precise issue before this court has not arisen previously in this state, two cases from Massachusetts address the extent of ingress/egress easements to a beach. In *Anderson v. De Vries*, 93 N.E.2d 251, 253 (Mass. 1950), abrogated on other grounds by *M.P.M. Builders, LLC v. Dwyer*, 809 N.E.2d 1053 (Mass. 2004), the dominant estate landowners claimed "a right of way appurtenant to their lots over [the servient estate ] to the beach and the right to use the entire beach." The grant upon which the dominant estate in *Anderson* relied stated:

> There is appurtenant to [the] above described lot a right of way to the beach over the way shown on said plan as Beaton Road, and along the westerly side of lot B2 as shown on Plan No. 15396B, in common with others entitled thereto.

*Anderson*, 93 N.E. 2d at 254. For present purposes, the important part of the trial court's ruling is its determination "that the words 'to the beach' carried with them the use of the beach." *Id.* The Supreme Judicial Court of Massachusetts affirmed the lower court's decision against the servient estate owners' argument that the dominant estate owners "had no rights beyond the high water mark." *Id.* at 255. In so holding, the Court stated, in pertinent part:

> *It would be inconsistent with the manifest intention of the parties if these deeds and instruments were so construed as to deprive these owners of land in lot A from reaching the water. They were given a way to the beach. There is no express mention of any right to use the beach.* A beach as customarily understood by residents of seashore resorts comprises the land above the ordinary high water mark, "more or less well defined by natural boundary, or in the rear by a sea wall, providing a convenient and safe access to the water for bathing or for sun baths either before or after going into the water." *The way to the beach carried with it the right to use the beach for the purposes for which the way was obviously intended.* We do not agree with the respondents' contention that the use of the beach should be confined to an area not greater than the width of the right of way. The owners of parcels in lot A had used the entire beach with the assent of the petitioners, who in some instances stated to intending purchasers that they would have such right in the beach, and the respondents were told before

- 12 -

they purchased "that parties had rights in the beach." . . . The judge was not wrong in finding that these lot owners, that is, those claiming under deeds containing said uniform clauses had the right to use the entire beach on the sea side of lot B2 "for swimming, sunning, boating and other usual purposes in common," and to this extent the lots of the respondents were servient estates to these prior vested rights. *The use of the beach by these lot owners included whatever was reasonably necessary for the full enjoyment of the privilege granted.*

*Id.* at 255-56 (citations omitted) (emphasis added).

In the present case, like in *Anderson*, the grantors' deed does not mention any right to use the beach/bar. Ms. Moser testified that, when she and her husband gave Tract 1 to her son, they intended for him to be able to engage in activities such as camping, fishing, swimming, and sunbathing at the bar. The Court in *Anderson* applied the principle that "'[w]hen an easement . . . is created, every right necessary for its enjoyment is included by implication.'" *Id.* at 256 (quoting *Sullivan v. Donohoe*, 191 N.E. 364, 365 (Mass. 1934)). Under this analysis, the Stanges have the right to engage in recreational pursuits at Tanner's Bar.

Similarly, in *Murphy v. Olsen*, 826 N.E.2d 249, 250 (Mass. Ct. App. 2005), inland landowners sought beach rights "incident to an express reservation of a pedestrian easement 'to the beach' in deeds to two of the defendants." The trial court denied relief to the plaintiffs. *Murphy*, 826 N.E.2d at 250. In reversing the trial court, the appellate court cited *Anderson* and the principle quoted above. *Id.* at 254.

Some Tennessee decisions have relied upon the Restatement (Third) of Property (Servitudes) in interpreting easements. *See, e.g.*, *BakerSouth, LLC v. Green Hills Mall TRG, LLC*, No. M2018-02129-COA-R3-CV, 2020 WL 398597, at *5 (Tenn. Ct. App. Jan. 23, 2020); *Ingram v. Wasson*, 379 S.W.3d 227, 238-240 (Tenn. Ct. App. 2011); *Rawdon v. Johnston*, No. M2010-01097-COA-R3-CV, 2010 WL 4867451, at *3 (Tenn. Ct. App. Nov. 23, 2010). Several provisions of the Restatement (Third) of Property (Servitudes) support the Stanges' position in this case. Comment b to section 2.15 states that an easement includes "[r]ights necessary to [the] reasonable enjoyment of property." Section 4.10 of the Restatement (Third) of Property (Servitudes) (2000) provides in pertinent part as follows:

Except as limited by the terms of the servitude determined under § 4.1, the holder of an easement . . . is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude.

We further note that, in *Goetz v. Knoxville Power & Light Co.*, 290 S.W. 409, 411, 414 (Tenn. 1926), our Supreme Court held that an express easement for "right of access

- 13 -

to the adjoining park and use of the spring on same" included "by necessary implication, the right to the use and enjoyment of the park" and not simply "the right to pass through the park in order to reach the spring." Thus, the concept that an express easement contains implied rights has been recognized by the courts of this state.

In its memorandum opinion, the trial court cited *Foshee v. Brigman*, 129 S.W.2d at 207, in support of its conclusion that, under the language of the deed, the easement was for ingress and egress only. We respectfully conclude that the trial court read the *Foshee* case too restrictively. In *Foshee*, the Court considered the right of the servient estate owner to erect gates across a right of way held by the dominant estate owner. *Foshee*, 129 S.W.2d at 207. The Court applied the general rule that "'the grant of a way without reservation of the right to maintain gates does not necessarily preclude the owner of the land from doing so'" unless there is an express stipulation or clear expression of intention for the way to remain open, so long as the landowner constructs the gates "'so as not unreasonably to interfere with the right of passage.'" *Id.* at 208 (quoting 17 AM. JUR. 1011). The authorities supporting this rule, the Court explained, recognized a distinction between "the rights of the owner of the dominant estate where his easement arises by prescription and where it arises under a deed." *Id.* It was in this context that the Court in *Foshee* made the statement relied upon by the trial court in the present case: "If the easement is claimed under a grant, the extent of the easement is determined by the language of the grant." *Id.* The Court then stated that, "If the easement is claimed by adverse use, the extent of the easement is determined by the character of the use." *Id.*

The question before the Court in *Foshee* was different than that before us and the Court's analysis does not preclude a determination that, where there is an ingress/egress easement such as that in the deed in the present case, the owner of the dominant estate may have the right to the reasonable enjoyment of the property, which in this case is for recreational purposes. As we have already discussed, the intent of the original granting parties governs this determination.

The Robertses have cited several opinions in support of their position, all of which we find distinguishable. The case of *Shell v. Williams*, 2014 WL 118376, at *1, involved the proper use of an express easement by the servient estate owner, who planted trees and placed boulders in the easement. The Shells "contended that the trees and boulders impeded their ability to use the easement for recreational purposes, including riding horses and driving all-terrain vehicles." *Shell*, 2014 WL 118376, at *1. The trial court found that it was reasonable for the parties to use the easement for recreational purposes and that the servient estate owner had interfered with the Shells' use and enjoyment of the property. *Id.* at *2. The court, therefore, ruled that the Shells had the right to remove the obstructions from the easement. *Id.*

On appeal, this court addressed the issue of whether the trial court erred in failing to limit the use of the easement to ingress and egress. *Id.* at *4. The trial court found that

- 14 -

"the parties agreed that the purpose of the easement was for ingress and egress," and this finding had not been appealed. *Id.* at *7. This court relied upon the principle that, "'Where [an] easement is not specifically defined, it need be only such as is reasonably necessary and convenient for [the] purpose for which it was created.'" *Id.* (quoting *Burchfiel*, 2006 WL 3421282, at *3. The court also stated that "the purpose of an easement is determined at an easement's creation." *Id.* (citing *Shew v. Bawgus*, 227 S.W.3d 569, 576 (Tenn. Ct. App. 2007)). The recreational purposes at issue included "riding horses and all-terrain vehicles along the easement outside the twenty-foot gravel driveway." *Id.* at *8. The court concluded that, "because the purpose of [the] easement is for ingress and egress, recreational use of the easement that involves more than mere ingress and egress from the road to the other parcels of land is not authorized." *Id.*

The circumstances at issue in *Shell* are materially distinct from the facts before us in this case. In *Shell*, the court found that the easement was created to provide back parcels access to Lamar Road. *Id.* at *7. As we have already discussed, the easement in this case was created to provide access to Tanner's Bar, a place used for recreational purposes.

The Robertses also rely on the case of *Burchfiel v. Gatlinburg Airport Authority*, 2006 WL 3421282, the facts and holding of which we discussed above. In that case, this court determined that the construction of a sign within the easement by the owner of the dominant estate was not related to the express purpose of the easement (which was to provide ingress and egress to and from the airport's property). *Burchfiel*, 2006 WL 3421282, at *1, *5. Putting a sign on the easement was not "'reasonably necessary and convenient for [the] purpose for which [the easement] was created.'" *Id.* at *3 (quoting *Adams*, 156 S.W.2d at 358). By contrast, in the present case, the right of ingress and egress had no significant value without allowing recreational activities at Tanner's Bar, and the easement was originally created for that purpose.

Finally, the Robertses cite *Columbia Gulf Transmission Co.*, 2006 WL 2449909. In that case, however, the language of the deed was "clear and unambiguous" as to the issue before the court. *Columbia Gulf*, 2006 WL 2449909, at *5. In the present case, by contrast, the trial court noted that the deed did not explain the nature of Tanner's Bar and that the court was "left with the task of determining what this means." As discussed above, the intention of the parties in the present case is apparent from the circumstances surrounding the creation of the easement.

For all of the reasons discussed above, we conclude that trial court erred in denying the Stanges the right to the recreational use of Tanner's Bar. The easement entitles the Stanges to engage in recreational activities at Tanner's Bar, including canoeing, swimming, fossil hunting, fishing, picnicking, camping, and sunbathing. This opinion does not address the issue of four-wheeler use on the easement.

III. Other conditions on use of the easement.

The last issue before us is whether the trial court erred in ruling that use of the easement was "limited to the plaintiffs and the resident(s) of Tract 1" and that "guests must have the Stanges with them and/or the resident(s) of Tract 1 (currently Angela Stange)" in order to use the easement appurtenant.

We find no support in the law for these conditions on the Stanges' use of the easement appurtenant. This court has quoted with approval the following general rule regarding the permissible use of an easement:

> "While a private way may not be used by the public generally or by any one having no better right than the general public, the owner of such a way is not limited to its use by himself, but it may be used by his family, by pets, by tenants occupying the land with his authority, by his servants, agents, or employees in conducting his business, by persons transacting business with him, *or by guests for social purposes*, except in cases where the right of way is created by express agreement and the user is restricted by the terms of the agreement."

*Cellco*, 172 S.W.3d at 597 (quoting 28A C.J.S. *Easements* § 164 (1996)) (emphasis added). There is nothing in the terms of the deed preventing the dominant tenement holder from inviting persons to use the easement. The requirement that the dominant tenement holder be present while invitees use the easement has no basis in Tennessee law or in the terms of the deed.

Moreover, these conditions impermissibly burden the Stanges' use and enjoyment of the easement. For example, "[i]t is the generally accepted rule of law that the owner of an easement may make reasonable maintenance as necessary for its use." *Hager v. George*, No. M2013-02049-COA-R3-CV, 2014 WL 3371680, at *4 (Tenn. Ct. App. July 8, 2014). Requiring the Stanges to be physically present for invitees to have access to the road would limit the Stanges' ability to contract with professionals to perform maintenance on the road.

Furthermore, such a condition interferes with the Stanges' use and enjoyment of the dominant estate. Mr. Stange testified at trial that he was attracted to purchasing Tract 1 largely because of its proximity and access to the river. He stated that, after buying the property, he and his family would go down to Tanner's Bar or to the river and "go canoeing, swim, look for fossils, play with the kids . . . [and] picnic." Angela Stange testified about several occasions when she had used the river access with her friends. Allowing their guests to use the easement to get to their property from the Duck River was part of what made the property attractive to the Stange family.

We conclude that the trial court's requirement that the Stanges or a resident of Tract 1 be present when their invitees use the easement unreasonably restricts the

- 16 -

Stanges' use and enjoyment of their easement and of the dominant estate and is not authorized by the law or the facts of this case.

## CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded with costs of appeal assessed against the appellees, Hank E. Roberts and Edna E. Roberts, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE